JANOSKI v. NORTHWESTERN IMPROVEMENT CO.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1910.)

No. 1,768.

1. TRIAL (§ 178*)—DIRECTION OF VERDICT—GROUNDS.
   In passing on a motion to take a case from the jury, it is the duty of the court to take that view of the evidence most favorable to the party against whom the motion is made, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict for such party could be found.

   [Ed. Note.—For other cases, see Trial, Cent. Dig. § 402; Dec. Dig. § 178.*]

2. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.
   Evidence considered, in an action against a coal mining company to recover for the death of an employé, who was killed by the sudden starting of machinery about which he was working, making repairs, and held such as to require the question of his contributory negligence to be submitted to the jury.

   [Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 289.*]

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Action by Josephine Janoski, in her own behalf and as guardian ad litem of Agnes Janoski, a minor, against the Northwestern Improvement Company. Judgment for defendant, and plaintiff brings error. Reversed.

Bates, Peer & Peterson, for plaintiff in error.

George T. Reid and J. W. Quick (Charles S. Gleason, of counsel), for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. The plaintiffs in error were plaintiffs in the court below; the defendant in error being the defendant there. We are of the opinion that the trial court erred in directing, as it did, a verdict for the defendant. The action was for damages for the death of one John Janoski, alleged to have been caused by the negligence of the defendant. The complaint alleged, among other things, that the deceased was employed by the defendant as carpenter, electrician, and machinist in and about its coal mines in Pierce county, Wash., where the defendant maintained a large transmission wheel, about 12 feet in

diameter, over which a rope ran, furnishing the power to certain of its machinery; that on October 5, 1907, Janoski was directed by the defendant's superintendent to go upon an elevated platform surrounding the wheel, which platform was, according to the evidence, about 4 feet wide, and to remove certain twists and kinks from the rope, and also to remove a piece of 2-inch pipe which had been stuck through the spokes of the wheel, and that while Janoski was engaged in that work the superintendent caused the wheel to be suddenly started without warning to the deceased, resulting in his fall and subsequent death. The answer of the defendant, besides denying the allegations of negligence on its part, pleaded, among other things, contributory negligence on the part of Janoski, which affirmative defense constituted the ground of the court's ruling, as will be seen from its opinion which is as follows:

"I think the defense of contributory negligence on the part of the deceased has been fully made out, in all views that may be taken of the case, by the uncontradicted evidence and.by the testimony of witnesses who were there and have been called as witnesses for the plaintiff. He was in a situation which required care on his part, as well as every man there. for his own safety and that of those who were working with him. If he knew that the wheel was about to be started in operation with the gas pipe block in. that it was liable to cause injury to the machinery, or inflict an injury to himself or any person there, he was under obligation to check it. All he had to do was to say, 'Wait.' One word would have been sufficient to delay the starting of the machine until he could have removed the pipe. He must be assumed to know that the gas pipe was there; for, according to the testimony, he put it there, and was in the best position for any one to see it. He was the one who would have removed it, if it had been removed, and in disregard of the warnings which others had, and which he could have heard if he had been paying attention, it must be assumed that he was for the time being inattentive, to permit the machine to be started without first removing the gas pipe; that not doing so was negligence, and at least a contributing cause of the injury, if that piece of pipe caused the injury. I grant the motion."

As a matter of course the court cannot, in such cases, undertake to weigh conflicting evidence, and the law is well settled that in passing upon a motion to take a case from the jury, it is the duty of the court to take "that view of the evidence most favorable to the party against whom it is moved to direct a verdict, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for the party having the onus." Mt. Adams & E. P. Inclined Railway Company v. Lowery, 74 Fed. 463, 20 C. C. A. 596; Jenkins & Reynolds Company v. Alpena Portland Cement Company, 147 Fed. 641, 77 C. C. A. 625, and numerous cases there cited.

It appears from the record that there was testimony going to show that one McDowell was the superintendent and one Hosko was the machinery foreman of the mine, and that about 25 or 30 feet out from and to one side of a point underneath the wheel was what was called a picking table, at which workmen picked out slate. John Urick, a witness on behalf of the plaintiffs, testified, among other things, as follows:

"I was blacksmithing, helping around the machinery in all kinds of work. John Janoski was a carpenter, electrician, looked after machinery, and certain parts of the work we helped each other in. He got hurt on Saturday between

2 and 3 o'clock in the afternoon. John and I were out in the blacksmith shop that day eating our dinner—we were late to dinner—when Hosko, the bunker boss and machinery foreman for the mine, came over to the blacksmith shop and wanted us to splice the rope on the big transmission wheel. We went over to the bunker to do this. There was there at the time a fellow who was picking slate, a couple of Italians, George Dorke, Hosko, and I, and John Janoski and Mr. McDowell came with us. When Janoski and I first came there, we took the tightener up with the block and tackle. Mr. McDowell was there at the time. This tightener was taken up with a block and tackle to give slack to the rope, and bring it down on the floor, so we could splice it. We raised that up, and the rope was not exactly on that side. We had to turn the wheel before we raised that up, so that the rope came on the side so we could splice it. The part of the rope that needed splicing was not on the left side of the wheel, but was further over, and you had to turn the wheel to get it where you could splice it. We then raised the tightener up, took the rope off there to go ahead with our splicing. While we were doing this the transmission wheel was moving a little. It pulled the rope out of our hands while we were splicing. We decided to put something in the wheel to keep it from turning around. Hosko, Mr. McDowell, Janoski, and I were all there, and we all said, 'We got to block that wheel.' We put a piece of pipe under the spoke in the big wheel on the upper platform. To loosen the rope we raised the tightener up. When the rope would come off here, it would come down on the floor, and we spliced it right there on the floor. We were putting the pipe in there (indicating the spoke of the wheel). John Janoski put the pipe in, and put the pipe right in this spoke here (referring to the spoke in the big wheel). He put the pipe right across here, maybe eight feet long. The pipe was lying on the platform all the time. We were trying to put the groove in that side. Janoski put this pipe that was lying there through the wheel. At this time Mr. McDowell and Hosko were standing down below where Janoski was. There was nothing to prevent us from seeing what Janoski was doing. I saw Janoski put the pipe in. After Janoski had done that he came down on the floor, and we commenced to splice the rope. It probably took half or three-quarters of an hour to splice the rope. McDowell was there all the time, from start to finish. After the splicing was done, Janoski went on top, loosened the tightener, and let it down. I was underneath, holding the rope. I was standing right there (indicating platform on model directly under wheel), on the right side of the wheel. We put the rope here (indicating), after Janoski let the tightener down. We have to turn the wheel once or twice on the shaft before it tightens the rope up. Little kinks form in the rope, made by the splicing. After Janoski let the tightener down, he went up to straighten the kinks, put the rope in the groove. He could not reach from below, had to go up. He straightened the kinks out, so that when the wheel started the rope would run in the proper groove. If we did not do this, it would tangle and tear everything. When Janoski was taking the kinks out above, I was taking the kinks out down below, so the rope would follow in the groove. While we were doing this, Hosko was walking over toward the picking table, and he said, 'Watch yourselves!' to George and the others at the picking table and down below in that part of the washer house. After he had said that, he stepped back toward the wheel, and said to Mr. McDowell, 'Are you ready to start up?' Mr. McDowell said he was, and to ring the bell. When this signal was given, Janoski was straightening up the kinks, had not got his work done, and was not ready for the thing to start. When Hosko rang the bell, the engineer happened to be right near the clutch in the engine room, and threw it on quick, and the machinery started up, all at once. The pipe bent, went around, and hit Janoski on the head, and knocked him down on the floor where I was standing. Before McDowell told Hosko to start the machinery, no one asked Janoski if he was ready to have it started. At the time he was still working taking out the kinks, and I was holding the rope from below. Janoski did not say that he was ready for the machinery to start. He did not say anything."

Certainly this was testimony tending to show that the superintendent knew of Janoski's position, what he was doing, and without any notice to him, and without making any inquiry as to whether Janoski had

finished the work he was sent to do, that he directed Hosko to ring the bell and start the machinery. And there was more testimony tending in the same direction. George Dorke, a witness for the plaintiffs, testified, among other things, as follows:

"I remember when the splicing of the rope was done the day that John Janoski was hurt. There were present during the time the splicing was being done John Urick, John Janoski, John Jacobson, Mr. McDowell, the superintendent, and Hosko, the bunker boss. They were about half an hour at the work. I was working shoveling out rock at my working place while they were splicing the rope, finishing my work about ten minutes before the splicing was completed. There were two Italians, named Frank and Mike, who were at work down below me on the ground; one pushing out to a rock pile the rock I had shoveled out, and the other shoveled out slack. There were wheels and chains that drive the pulley and hoisting chains located near their working places. This machinery was standing still while the splicing was being done, the same as the picking table and other machinery about which I was working. When I got through with my work, I sat down on the edge of the table and waited for them to start. I did not go up where they were working. Shortly before the machinery started, Hosko stepped over to the edge that is open, where he could see down below in the bunker, toward where I was, and toward where the other boys were, below me. He said, 'Watch yourselves!' and I said, 'All right.' He was walking around doing something for a few minutes, I don't know what, and not walking toward the south end of the coal bunker. He said, 'Watch yourselves!' again. He came in there to see down below, and asked me for the other fellows, and I told him Frank was on the rock pile doing something, and he hollered out to Frank to come in, and Frank did so. After that he came down the third time, and did not see all of us, as little Mike was down below yet, and he was going to ask for him, and I told him he was not up yet. He was going to the south end again, and hollered out for Mike, who was working on the dumping pile, and he (Mike) was coming up the ladder to the south end, and little Frank answered for him. Hosko started over toward the wheel, and asked McDowell whether everything was ready to start. McDowell said, 'Yes,' he thought everything was ready to start. Hosko went and pulled the wire, stepped from the wheel up this direction to the southwest side to pull the wire, which gave the signal to the engine room. When he did that I turned myself to the table to do my work again when the rock came along, and I did not do any more than this when the engine started. Then I heard something drop, make a heavy fall. I turned around, and saw Hosko run for the wire to stop the machinery. The Italians and I ran up, and John Janoski was lying on the floor, unconscious."

John Urick, being recalled, testified among other things as follows:

"This same rope had been spliced on the previous Wednesday of that same week. John Janoski, Hosko, and I did the splicing. McDowell, the superintendent, was not there when we started splicing the rope on Wednesday, but came when we were about half through. The wheel was blocked that day with the same pipe that it was when Janoski was killed. I put the pipe in myself, and put it in the same way that Janoski put it in the time he got hurt. I took the pipe out of the wheel myself, and McDowell was there when the pipe was taken out and when the machinery started up again. Hosko started up the machinery on the order of McDowell. The day Janoski was hurt neither Hosko, nor McDowell, the engineer, nor any one said anything to him about not putting the pipe in the wheel. * * * When Hosko asked if everything was ready before he pulled the wire, McDowell said it was all right, and I said it was all right, because McDowell was there and said so."

Testimony was also given, apparently without objection, tending to show that McDowell said "that for the minute he had forgotten that Janoski was up on the platform, and that when he ordered the engine started he forgot all about Janoski being up there." Statements of

Hosko were also given in evidence, also without objection so far as appears, to the effect that "when he said, 'Watch yourselves!' he was talking to the pickers, and not to Janoski," and that "he also said he did not think anything about Janoski being on the platform when he started the engine, and that McDowell was the one who said, 'All right; go ahead,' as he (Hosko) asked if they were all ready."

We think it clear that the case was one for the consideration and determination of the jury, under appropriate instructions, and accordingly must reverse the judgment and remand the case for a new trial.

Ordered accordingly.