Argued February 15, reversed and dismissed March 13, 1917.

# BISSINGER & CO. *v.* MASSACHUSETTS BONDING & INS. CO.

(163 Pac. 592.)

**Insurance—Indemnity Policies—Contract.**

1. Guaranteeing the fidelity of employees is a form of insurance.

**Insurance—Actions—Defenses.**

2. An indemnity company seeking to defeat an action on a policy guaranteeing the fidelity of an employee, upon the ground that the employer has not complied with warranties made in the application, need not tender a return of the premiums.

[As to recovery of premium paid for fidelity insurance, see note in Ann. Cas. 1916C, 1222.]

Insurance—Indemnity Insurance Policies—Construction—"Cash Securities"—"Security"—"Cash."

3. Where the application for a policy guaranteeing the insured against loss from the peculations of an employee stated that monthly examinations of the employee's accounts would be made and cash securities, etc., counted, the term "cash securities" must be treated as meaning bonds or negotiable instruments easily convertible into money and not a bank deposit; the word "cash" usually meaning money on hand, and the term "security" usually being interpreted as something given or deposited to guarantee the payment of a debt or the performance of a condition.

Insurance—Indemnity Insurance Policy—Compliance With—"Voucher"—"Valuable Securities."

4. The application in a policy guaranteeing an employer against loss by larceny or embezzlement of one of its employees recited that there would be monthly a thorough examination of his accounts made by an auditor or expert accountant, and cash securities, etc., would be compared and verified with accounts and vouchers. Previous answers to questions stated that the employee would not have custody of valuable securities, but only merchandise on hand. The employee embezzled large sums over a considerable period of time by destroying drafts for merchandise shipped to the branch house of which he was manager, and then drawing upon an account maintained by the employer for such purposes checks for sums greater than the drafts for the purchases. The statements prepared monthly by the employee were duly examined by the employer's auditor, but the merchandise on hand was not checked up. *Held*, that the term "valuable securities" included merchandise on hand, and the employer's failure to compare the same with vouchers which are written instruments, showing on what authority or by what authority particular payments of money had been made, was a failure to comply with the warranties in the application, and prevented recovery.

From Multnomah: George N. Davis, Judge.

Department 2.  Statement by Mr. Justice Moore.

This is an action by Bissinger & Company, a corporation, to recover from the Massachusetts Bonding and Insurance Company, a corporation, $3,000, the amount of an indemnity bond issued by the defendant, to save the plaintiff harmless against loss by the larceny or embezzlement of Eugene Henle, one of its employees. From a judgment for the sum demanded in the complaint the defendant appeals.

Reversed and Dismissed.

For appellant there was a brief with oral arguments by *Mr. D. P. Price* and *Mr. John T. McKee.*

For respondent there was a brief over the names of *Mr. Hall S. Lusk* and *Messrs. Dolph, Mallory, Simon & Gearin,* with an oral argument by *Mr. Lusk.*

Mr. Justice Moore delivered the opinion of the court.

It is contended that an error was committed in refusing to direct a verdict for the defendant, on the ground that the undisputed evidence showed that the plaintiff's proper agent, in response to printed inquiries in the application for fidelity insurance, made written promissory answers concerning the risk, which replies were expressly made warranties, and not having been performed rendered the guaranty void. The evidence discloses that the plaintiff is a dealer in hides, pelts, tallow, etc., having a general place of business at Portland, Oregon, and maintaining a branch house at Boise, Idaho, where Henle was the manager. The application mentioned in referring to Henle reads:

"Question 12.   (a)  Will applicant have the custody of valuable securities?

"Answer.   (a)  Merchandise on hand. * *

"Question 14.   (a)  To whom and how frequently will he account for his handling of funds and securities? * *

"Answer.   (a)  Monthly. * *

"Question 15.   (a)  How often will a thorough examination of applicant's books and accounts be made by an auditor or expert accountant; and cash securities, etc., be counted, compared, and verified with accounts and vouchers?

"Answer.   (a)  Monthly."

The application stated that such answers were warranted to be true, and were conditions precedent to a

right of recovery under the bond, or of any renewal or continuation thereof.  Based upon such request there was issued for one year from January 1, 1911, the bond which recites that it was executed in reliance upon the faith of the plaintiff's written statements, which were warranties and conditions precedent to a right of recovery on the policy.  At the plaintiff's request the indemnity was annually renewed and in force when the liability occurred.  In order to obtain a renewal of the bond for another year, beginning January 1, 1914, Mr. Sam Bissinger, the plaintiff's resident manager at Portland, addressed to the defendant a letter containing the following clause:

"This is to certify that on the 1st day of December, 1913, the books and accounts of Mr. E. Henle in our employ at Boise, Idaho, were examined by us and we found them to be correct in every respect, and all money handled by him accounted for."

Based thereon the bond was renewed and continued, but between January 1, 1914, and September 1st of that year Henle unlawfully appropriated to his own use of the plaintiff's money the sum of $3,990.14.  He was enabled to escape detection by false entries which he directed to be made in the books.  The plaintiff's traveling agent visiting butchers and dealers in his district bought hides, etc., which were shipped to the branch house accompanied by a sight draft, drawn upon his principal and payable through the Boise City National Bank.  These drafts upon their arrival were paid by Henle's checks issued against a deposit which the plaintiff kept in that bank for such purpose.  The manager of the branch house, by destroying the traveling agent's statements of the number and weight of hides, etc. received, deceived the plaintiff by falsely charging in his books "merchandise account" with a fictitious

cost equal to the sum of money which he appropriated. The aggregate of the incorrect entries so made consisted of 197 green hides, 20,090 lbs., $2,872.63; 22 dry hides, 1,459 lbs., $368.40; 727 dry pelts, 5,916 lbs., $749.11, making a total of $3,990.14. Henle's method of obtaining money is illustrated by sight draft No. 5,366, drawn by the traveling agent for $61.19, for the discharge of which the manager issued his check for $161.19, caused an entry to be made in the books of the latter sum as the purchase price of the merchandise, thereby appropriating to his own use $100. These extra charges ranged from $25 to $300. The traveling agent on June 11, 1914, drew sight draft No. 7,304 for $5, on account of which Henle issued his check for $205, and caused an entry of the latter sum to be made in the books as though the money had been paid for merchandise in transit. The manager issued a check for $1,193.48, and the bookkeeper at his direction without knowledge of the falsity entered in his records $793.48 as having been paid out for merchandise, thereby creating at the bank a deficiency of $400. Every month the bookkeeper at Boise made copies of all entries in his ledger relating to the transaction of the plaintiff's business at the branch house, and mailed such reports to the Portland house, where they were examined and considered correct until about September 1, 1914, when the misappropriation was discovered.

1, 2. The foregoing is deemed a fair synopsis of the uncontradicted evidence, a consideration of which, it is argued by defendant's counsel, entitled his client to a directed verdict. It is maintained by plaintiff's counsel, however, that the legal principle thus insisted upon is inapplicable herein, for that the answer does not aver there was any offer to return a part of the premiums received, nor was such tender made. Guar-

anteeing the fidelity of employees is a form of insurance: 19 Cyc. 516. Based upon this precept the plaintiff's counsel invoke the rule prevailing in Indiana, where in an action to recover on a life insurance policy if a breach of warranty is relied upon in the answer, such defense is unavailing unless the pleading alleges a return of the premiums received. As illustrating the doctrine which obtains in that state, see the notes to the case of *Modern Woodmen of America* v. *Vincent,* 40 Ind. App. 711 (80 N. E. 427, 82 N. E. 475, 14 Ann. Cas. 89, 91). In all other jurisdictions in the United States, however, a different determination has been reached, the reasons for which are fully set forth in the notes to the case of *Metropolitan Life Ins. Co.* v. *Felix,* 73 Ohio St. 46 (75 N. E. 941, 4 Ann. Cas. 121, 123). We can see no reason for departing from the majority rule.

3. It is also argued by plaintiff's counsel that an alleged breach of warranty was not relied upon as a defense in the lower court, and this being so, no change in the theory of the presentation of the cause on appeal should be allowed. Though the bill of exceptions contains some expressions which might seem to support the assertion last made, a fair construction of the affirmative averments of the answer, and an examination of the evidence offered in support thereof, show that an alleged breach of warranty was set up and relied upon as a defense herein.

By express declaration contained in the application and in the bond predicated thereon the plaintiff's written answers to the defendant's questions were made and thereby became warranties: *Buford* v. *New York Life Ins. Co.,* 5 Or. 334; *Chrisman* v. *State Ins. Co.,* 16 Or. 283 (18 Pac. 466); *Beard* v. *Royal Neighbors of America,* 53 Or. 102 (99 Pac. 83, 17 Ann. Cas.

1199, 19 L. R. A. (N. S.) 798); *Willoughby* v. *Fidelity & Deposit Co.*, 16 Okl. 546 (85 Pac. 713, 8 Ann. Cas. 603, and notes). It will be remembered that question No. 12 (a) in referring to Henle reads: ''Will applicant have the custody of valuable securities?'' and that the plaintiff's agent replied; ''Merchandise on hand.'' By this answer the word ''securities'' was interpreted by the plaintiff to mean hides, pelts, tallow, etc. It will also be kept in mind that question No. 15 (a) is as follows: ''How often will a thorough examination of applicant's books and accounts be made by an auditor or expert accountant; and cash securities, etc., be counted, compared, and verified with accounts and vouchers?'' The original printed questions with their written answers have been brought up, and an inspection of them shows that no comma appears between the words ''cash'' and ''securities'' as last above used. The word ''cash'' generally means money on hand. The term ''security'' is usually interpreted as something given or deposited to guarantee the payment of a debt or the performance of a condition: Words & Phrases, 994 and 8386. When the word ''cash'' is employed to qualify the word ''securities,'' such phrase should be construed to signify bonds or negotiable instruments that are easily convertible into equivalent money. It is not believed the term ''cash securities'' could have been intended by the parties to mean a bank deposit, for that is commonly understood to be money on hand.

4. The reports monthly sent from the branch house when examined at Portland by an expert accountant did not disclose any discrepancy in the written statement. Such auditor without going to Boise, taking an account of the merchandise, and making an invoice thereof could not have ascertained whether there was

any deficiency in the reported number of hides and pelts, or in the weight of the tallow purported to be stored in the warehouse. It would seem, however, that any oral or written request made to the plaintiff's traveling agent in that district with respect to the amount of purchases which he had made for his principal, and the number and value of the drafts that he had issued therefor, would have revealed Henle's fraudulent scheme. So, too, it would also appear that the Boise City National Bank, at plaintiff's request, would have furnished a statement of its account showing the shortage of $400.

A monthly examination of Henle's books and accounts as stipulated in and warranted by the plaintiff's answer to question No. 15 (a) meant more than a mere inspection of the reports which were sent from the branch house to Portland. Constant vigilance on the part of an employer tends to deliver even a trusted employee from temptation and helps him clearly to distinguish between his own property and that of others. By means of a fidelity bond an employer shifts liability against loss occasioned by the larceny or embezzlement of an employee to the guarantor, but the indemnity assured does not relieve the employer from that degree of watchfulness which he has warranted to exercise. The failure monthly to examine Henle's books and accounts as covenanted brings this case within the rule announced in *United States Fidelity & Guaranty Co.* v. *Downey,* 38 Colo. 414 (88 Pac. 451, 120 Am. St. Rep. 128, 10 L. R. A. (N. S.) 323), where an indemnity bond was given to a miner's union to secure the faithful discharge of the duties of its treasurer. The contract there entered into stipulated that the union should notify the insurer on discovering any dishonesty on the part of such

officer.   In its application for the insurance of the bond the agent for the union had stated that the treasurer's accounts would be examined and verified every three months by trustees of the insured.   The application further recited that the statements therein contained were warranted to be true, and that the business of the union should be maintained as specified.   In February it was discovered that the treasurer was short in his accounts.   A quarterly examination of his books had been made in the preceding December, when it was ascertained he should have had on hand $740. He exhibited a bank-book showing deposits of $440, and accounted for the balance as being in cash.   The sum of money purporting to have been evidenced by bank deposits was not checked up, and it was held that the union having failed to verify the funds supposed to have been in the treasurer's possession, as required by the promissory warranty, relieved the company of liability.

It will be recalled that Henle's peculation continued for about eight months when his breach of trust was discovered.   If a careful examination of his books and accounts had been made as stipulated, the loss would have been minimized and limited to one month's misappropriation, for it must be taken for granted that, as soon as it was ascertained that he was unlawfully converting plaintiff's money to his own use he would have been summarily discharged.   The warranty in respect to the periodical examination of the books and accounts was by express agreement made the basis of, and the consideration for the defendant's undertaking to answer for the employee's embezzlement from month to month, to the extent of the sum named in the bond, during the yearly term of the policy, if

the plaintiff faithfully kept and performed its covenant.

The abbreviation "etc." affixed to the phrase "cash securities" as found in question No. 15 (a) shows that other forms of security were intended to follow or understood to be included, such as "Merchandise on hand" as given in answer to question No. 12 (a). The latter class of security the plaintiff by its answer to question No. 15 (a) was required thoroughly monthly to examine, to count, and also to compare and verify such securities with accounts and vouchers. A "voucher" is a written instrument showing on what account or by what authority particular payments of money have been made: *Camp & Du Puy* v. *Lauterman*, 78 Or. 134 (152 Pac. 288). If the plaintiff had monthly counted, compared, and verified the "valuable securities," consisting of merchandise on hand, with the accounts and vouchers that should have been in the employee's possession, his scheme to defraud his principal would have been sooner discovered and the loss by embezzlement could have been limited to a single month's peculation. The plaintiff having failed to keep or perform its covenant in this respect is, by reason thereof, not entitled to a recovery herein.

As there was no conflict in the evidence, the issue to be determined was a question of law; and this being so an error was committed in denying the motion to direct a verdict for the defendant: *Coffin* v. *Hutchinson*, 22 Or. 554 (30 Pac. 424); *Oregon R. & N. Co.* v. *Hertzbery*, 26 Or. 216 (37 Pac. 1019); *Owens* v. *Snell*, 29 Or. 483 (44 Pac. 827); *Crawford* v. *Hutchinson*, 38 Or. 578 (65 Pac. 84); *Beard* v. *Royal Neighbors of America*, 53 Or. 102 (99 Pac. 83, 17 Ann. Cas. 1199, 19 L. R. A. (N. S.) 798); *Dalrymple* v. *Covey Motor*

*Car Co.,* 66 Or. 533 (135 Pac. 91, 48 L. R. A. (N. S.) 424).

It follows from these considerations that the judgment must be reversed and the action dismissed; and it is so ordered.          REVERSED AND DISMISSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCCAMANT concur.