[No. 18076.    Department One.    December 7, 1923.]

# METROPOLITAN CLUB, *Appellant*, v. MASSACHUSETTS BONDING & INSURANCE COMPANY, *Respondent*.[1]

APPEAL (285)—STATEMENT OF FACTS—SERVICE—PARTIES TO BE SERVED. It is not jurisdictional to serve the statement of facts and notice of filing thereof, on any party who is a party to the cause other than the adverse party to the appeal, and an appeal will not be dismissed for failure to do so.

APPEAL (360)—DISMISSAL—WAIVER OF RIGHT. An appeal will not be dismissed for failure to serve the statement of facts upon a codefendant who is not objecting, on the motion of the prevailing party who had notice and consented to the settlement and certification of the statement.

APPEAL (221)—NOTICE—PROOF OF SERVICE—ON CO-PARTY. While service and filing notice of appeal upon the prevailing party within five days is jurisdictional, proof of service upon a codefendant, made within the statutory time, can be filed within ninety days thereafter if the appeal was not thereby delayed.

APPEAL (167)—PARTIES—BONDS—OBLIGEES—CO-PARTIES. Upon appeal from a judgment in favor of one of the defendants, a codefendant, against whom plaintiff had judgment, which is not appealed from, is not a necessary obligee in the appeal bond.

INSURANCE (73, 121)—APPLICATION—BREACH OF WARRANTY—INDEMNITY INSURANCE—EVIDENCE—SUFFICIENCY. Liability upon an employer's policy of indemnity insurance is not defeated by the failure to take separate monthly inventories of stock in charge of the employee, as warranted in the application, where the employee did not embezzle the stock and the insurer was not injured by failure to take inventories monthly.

SAME (73, 121). An employer's policy of indemnity insurance, issued on an application promising a monthly accounting by the employee to club officers for all funds and property handled, does not require the monthly payment of the balance of the account, nor an account as for a settlement of the affairs; but the promise is complied with by monthly reports enabling the club officers to make a reasonable test of the accuracy and honesty of the account; especially where an "audit" was only promised annually.

SAME (42)—INSURANCE—CONTRACT—CONSTRUCTION. The answers by an insured to an insurer, in the application for insurance, must be interpreted most favorably to the insured.

[1]Reported in 220 Pac. 818.

Appeal by plaintiff from a judgment of the superior court for King county, Truax, J., entered January 27, 1923, dismissing a defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action upon a surety bond, to recover money embezzled. Reversed.

*Baxter & Jones*, for appellant.

*Grinstead, Laube & Laughlin* and *Harry A. Rhodes*, for respondent.

HOLCOMB, J.—A motion by respondent to strike the statement of facts herein because not served on respondent's co-defendant, Brazer, or his attorney, and no notice of filing of the statement of facts served on Brazer or his attorney, is denied as not well founded. While the statute, § 389, Rem. Comp. Stat. [P. C. § 7817], provides for the service of the statement of facts by appellant and of written notice of the filing thereof, on any party who is a party to the cause, other than the adverse party to the appeal, such service is not jurisdictional. *Mogelberg v. Calhoun*, 94 Wash. 662, 163 Pac. 29; *In re Patterson*, 98 Wash. 334, 167 Pac. 924.

Moreover, the co-defendant of respondent did not appeal, although judgment went against him, and it is not he who is moving against the statement of facts. Respondent was served with the statement of facts and at the settlement thereof, consented and concurred therein as certified by the trial judge. The case of *First National Bank of Aberdeen v. Andrews*, 11 Wash. 409, 39 Pac. 672, cited upon this point by respondent, is not in point, because in that case the defendant, who was not served, was similarly situated with his co-defendant, and under the appeal section had to be served

with notice of appeal, being an adverse party the same as his co-defendant. In the present case, appellant had judgment against respondent's co-defendant in its favor for the full amount it had asked.

A motion to dismiss the appeal is also made upon the ground that (a) the notice of appeal was not served upon respondent's co-defendant in the action, nor upon his attorney; (b) that the purported notice of appeal to the co-defendant was not filed within five days after its purported service, with a written proof of admission of service thereof; (c) that Brazer, the co-defendant, is not named as an obligee on the appeal bond.

The record shows that the notice of appeal was served upon Brazer, the co-defendant, although proof thereof was not filed within five days nor until May 12, 1923, in the court below, which was before the record was sent to this court on June 6, 1923.

The service of the notice of appeal and the filing of the notice with proof of service on the respondent within the statutory time was a jurisdictional necessity, but proof of service on the co-defendant could have been made even ninety days after, if the appeal was not thereby delayed. *Reynolds v. Reynolds,* 42 Wash. 107, 84 Pac. 579; *Main Investment Co. v. Olsen,* 43 Wash. 480, 86 Pac. 657; *Sipes v. Puget Sound Electric R. Co.,* 50 Wash. 585, 97 Pac. 723; *Seargeant v. Russell,* 110 Wash. 216, 188 Pac. 466; *Gazzam v. Young,* 114 Wash. 66, 194 Pac. 810.

.Nor does the statute prescribe when the proof of service of notice on other than the prevailing party shall be filed. *Sipes v. Puget Sound Electric R. Co., supra.*

It was not necessary to name Brazer or make him a beneficiary of the bond, appellent having a separate

.

judgment against him, with which it was satisfied, and not appealing as to Brazer. Had Brazer taken a separate appeal it would have been necessary for him to furnish a bond to respondent. *Smith v. Diamond Ice & Storage Co.,* 65 Wash. 576, 118 Pac. 646, 38 L. R. A. (N. S.) 994.

The motion to dismiss this appeal is, therefore, denied.

The action is against one Brazer and his surety to recover judgment for sums embezzled by Brazer while in the employ of appellant, as its secretary and manager.

The case was tried to a jury, which rendered a verdict that Brazer had embezzled from appellant the sum of $3,000, and rendered a verdict against the bonding company for the sum of $2,000, the penal sum of its bond. After the verdicts were filed, appellant's motion for judgment against Brazer in the sum of $2,583.63, was granted, appellant having waived all sums in excess of that amount. Its motion for judgment against the bonding company on the verdict was denied. The motion of the bonding company for judgment n. o. v. was granted.

The court submitted the case to the jury upon very fair and accurate instructions to which no exceptions were taken.

The complaint alleged, and there was evidence tending to prove, that from March 1 to October 1, 1921, Brazer, in the course of his duties, handled all of the club's money, collected all dues and charges from members, had general charge of the club rooms, including its dining room, billiard rooms, etc., bought all supplies, paid all bills, and had the management of the club under the direction of its officers and trustees. At the request of the officers of the club, he furnished a

bond written by respondent, in the sum of $2,000, to secure the appellant against any loss by acts of larceny or embezzlement on his part. The evidence tended to show that, during the course of his management, Brazer embezzled sums amounting to about $3,700, for which he had not accounted, and that the bonding company was notified of the embezzlement and neither it nor Brazer had reimbursed the club.

The bonding company, in its amended answer, admitted the issuance and delivery of the bond, but alleged that it had no knowledge of the above losses. It further alleged affirmatively that in order to procure the bond, the club made an employer's statement, a copy of which is attached to the answer, the material points of which are as follows:

"Q   4 (c)  How long has he been in your employ?
"A   4 (c)  Three weeks.
"Q  12 (a)  If in charge of merchandise, state nature, probable maximum value and other particulars?
"A  12 (a)  Club property, cigars, etc., $1,000.
"Q      (b)  How often will inventories of same be taken by anyone in your employ other than the applicant?
"A      (b)  Monthly.
"Q  15 (a)  To whom and how frequently will he account for his handling of funds, securities and property?
"A  15 (a)  To club officers, monthly.
"Q      (b)  What means will you use to ascertain whether his accounts are correct?
"A      (b)  Annual audit by certified accountant.
"Q  16 (a)  At what intervals will his books, accounts and vouchers be inspected and audited, and all moneys, securities, and values reported as due, on hand or in bank, be examined and verified?
"A  16 (a)  Annually.

"Q     (b)  By whom will such audits and inspections
            be made?
"A     (b)  Certified public accountants.
"Q     (c)  When was such an examination and veri-
            fication last made?
"A     (c)  March 1, 1921.
"Q     (d)  Were they found correct in every respect?
"A     (d)  Yes."

Respondent further alleged that these statements
were implied warranties and were false, and were not
performed by the club. Appellant replied, denying the
allegations of the affirmative defenses.

From a judgment entered dismissing the bonding
company upon its motion for judgment n. o. v., appel-
lant, appealing, assigns the same as error.

The only question necessary to be determined by us
is whether or not there was sufficient evidence to take
the case to the jury under the issues as affecting re-
spondent. Respondent insists that there was not
sufficient evidence or any evidence at all to justify the
case going to the jury as to it, and that there being
nothing for the jury to pass upon, it was purely a
question of law for the court. These contentions are
based principally upon the answers to questions 12(b),
15 (a & b), and 16 (a, b, c, & d).

Question 12 (b) was, "How often will inventories of
same (merchandise) be taken by anyone in your employ
other than the applicant?" The answer was "Month-
ly." The answer to the first part of the preceding
question stated that the club property consisting of
cigars, etc., of the value of about $1,000 would be in
the charge of Brazer.

The evidence shows that Brazer made a somewhat
detailed report for March, his first month, headed
"Loss and Gain," showing under the head of "In-
ventory 2/28" the property on that date on hand, com-

ing into his control. It also showed the quantity on hand as of "3/31." Such a report was also made for April and June in the same form, to the club officers. There was also a penciled report made for another month, which could not be found. Other reports were made by Brazer up to September of that year, and at a meeting held later in September, Brazer was discharged. These reports showed the quantity of merchandise on hand, and the merchandise was evidently there to show for itself, except that which had been sold. It was not the merchandise that was stolen or embezzled by Brazer, but moneys. There was, therefore, no apparent injury to respondent by the failure to have separate monthly inventories taken by someone other than the employee.

Question 15 (a) was, "To whom and how frequently will he account for his handling of funds, securities, and property?" The answer to question 15 (a) was, "To club officers, monthly."

As shown by the preceding discussion as to question 12 (b), reports were made monthly by the employee to the officers of the club and examined by them. A meeting was held by the trustees of the club once or twice each month, and usually at the first meeting in the month the reports were made by the employee, and examined by the president and other officers of the club.

These questions and answers, each constituting a promise, as respondent claims, did not call for the *payment* of the balance of the account, if any, by the employee to the club, but only that the employee should account for his handling of the funds, securities and property to the club officers monthly. No such accounting was called for by that question and the promise therein as the accounting of one partner to another upon the settling of partnership affairs, or of an agent to his principal upon the agent's business being finished,

but was merely such an accounting as was referred to in *Wolf v. Salem,* 33 Ill. App. 614, cited by respondent, that "an account is a detailed statement. It must be something which will furnish to the person having the right thereto information of a character which will enable him to make some reasonable test of its accuracy and honesty." Such an accounting was apparently made, if the jury believed the evidence of the officers of appellant, and the exhibits. While there were no exhibits of written reports for all of the months, there is testimony that substantially such reports were made for each and every month except the last month, September.

All the cases cited by respondent on all the promissory answers, and relied on by it, are cases where a much more strict accounting was required of the bonded employee, and a much more careful examination required under the promise of the employer. For example, in *United States Fidelity & Guaranty Co. v. Bank of Batesville,* 87 Ark. 348, 112 S. W. 957, the question was:

"To whom and how frequently will he account for his handling of funds and securities? A. Once a month, to the bank. Q (a). What means will you use to ascertain whether his accounts are correct? A (a). Check up his remittances. Q (b). How frequently will they be examined? A (b). About three times per month. Q (c). By whom will they be examined? A (c). Cashier of the bank. Q. When were his accounts last examined? A. This day, January 30, 1903. Q. Were they reported correct? A. Yes. Q. Is there now or has there been any shortage due by appellant? A. No. Q. Is he now in debt to you? A. No." etc.

Again, in *Bissinger & Co. v. Massachusetts Bonding & Ins. Co.,* 83 Ore. 288, 163 Pac. 592, the requirements on the part of the employer were much stricter and of greater frequency. Among the questions were these:

" 'Q 12. (a)  Will applicant have the custody of valuable securities?  Answer. (a)  Merchandise on hand. . . .  Question 14. (a)  To whom and how frequently will he account for his handling of funds and securities?  Answer. (a)  Monthly. . . .  Question 15 (a)  How often will a thorough examination of applicant's books and accounts be made by an auditor or expert accountant, and cash securities, etc., be counted, compared and verified with accounts and vouchers? Answer. (a)  Monthly."

So, also, in *United States Fidelity & Guaranty Co. v. Downey*, 38 Colo. 414, 88 Pac. 451, 120 Am. St. 128, 10 L. R. A. (N. S.) 323, frequent examinations and verifications of funds and property were required on the part of the trustees, and the same is true in *Hunt v. Fidelity & Casualty Co. of New York*, 99 Fed. 242.

A cursory examination of the questions and answers relied upon by respondent in this case show that the promissory answers given by appellants in this case were radically different.  For instance, an audit by a certified accountant was only promised annually.  And as to question 16 (a), the books, accounts, and vouchers of the employee were only promised to be inspected annually.  The employee did not remain with appellant a year, but was there only from March to October.

The rule adopted by this court is that, where the minds of reasonable men may differ as to the legal sufficiency of the evidence the jury and not the court must determine the question. *Atwood v. Washington Water Power Co.*, 79 Wash. 427, 140 Pac. 343, and it is the duty of the court to take that view of the evidence most favorable to the parties against whom the motion for judgment n. o. v. is made. *Janoski v. Northwestern Improvement Co.*, 176 Fed. 215; *Port Blakely Mill Co. v. Royal Insurance Co.*, 186 Fed. 716.

Viewing the club's answers as answers by an insured to an insurer, that interpretation which is most favorable to the insured must be adopted. *Remington v. Fidelity Deposit Co.*, 27 Wash. 429, 67 Pac. 989; *Port Blakely Mill Co. v. Springfield Fire & Marine Insurance Co.*, 59 Wash. 501, 110 Pac. 36, 140 Am. St. 863, 28 L. R. A. (N. S.) 596; *Guarantee Co. of North America v. Mechanics' Sav. Bank & Trust Co.*, 80 Fed. 766.

We are satisfied that there was sufficient evidence to take the case to the jury, and the jury having heard the testimony, determined the credibility of witnesses, passed upon the facts, and found for appellant, it was error to deny appellant's motion for judgment on the verdict, and grant the motion for judgment n. o. v. dismissing the respondent.

The judgment is therefore reversed, and judgment ordered to be entered upon the verdict in favor of appellant.

Main, C. J., Tolman, Parker, and Mackintosh, JJ., concur.