[No. 31388. Department Two. January 4, 1951.]

Don Coleman *et al., Respondents,* v. Donald Wisbey, *Defendant,* Luella Mayme Wisbey, *Appellant.*[1]

[1]Reported in 225 P. (2d) 1067.

*J. D. Searle,* for appellant.

*Hull & Armstrong,* for respondents.

HAMLEY, J.—Shortly after six o'clock on the evening of December 25, 1946, Don Coleman, accompanied by his wife, was driving westerly on a state primary highway. His car collided with the rear of an automobile, also traveling westerly, being driven by Donald Wisbey. Luella Mayme Olmstead, who became Mrs. Wisbey prior to the trial, was riding as a guest in the front seat of Wisbey's car.

The Colemans brought this action against the Wisbeys, as husband and wife, for damages resulting from the accident. The Wisbeys filed separate answers to the complaint, and each, after denying liability, cross-complained for damages.

Mrs. Wisbey, in her cross-complaint, charged Coleman with negligence, and claimed that such negligence was the proximate cause of the accident and of her alleged injuries. The Colemans' answer, among other things, denied that Coleman was negligent and, by way of affirmative defense, alleged that Mrs. Wisbey was herself guilty of negligence and carelessness which proximately contributed to her injuries, if any.

The case was tried to a jury, which returned separate verdicts denying relief to all the parties. Judgment was thereafter entered (a) dismissing the complaint of plaintiffs

against both defendants; (b) dismissing the cross-complaint of Donald Wisbey; and (c) dismissing the cross-complaint of Luella Mayme Wisbey (nee Olmstead). Following a formal denial of the defendants' motion for a new trial, Mrs. Wisbey alone appeals. The notice of appeal was not served upon her husband, nor was he named as an obligee in the appeal bond.

We have first to consider respondents' motion to dismiss the appeal. As the first ground for this motion, respondents point to the fact that the notice of appeal refers to

". . . each and every part of that certain judgment made and entered herein by the court on the 30th day of November, 1949, wherein and whereby the plaintiffs were awarded judgment against the defendants without damages."

Respondents contend that if this was intended as an appeal from the entire judgment, it is ineffective, since appellant was not aggrieved by the entire judgment, but only a portion thereof.

The notice of appeal, when read in its entirety, does not purport to appeal from the entire judgment, but only from the parts which are adverse to the defendants. Appellant asserts that the plural used for "defendants" was a typographical error and that only "defendant" was intended, meaning appellant.

▆ A notice of appeal must ordinarily be judged by what it recites, and not by what the appellant intended it to recite. *Edwards v. Bounds*, 18 Wn. (2d) 836, 140 P. (2d) 963. However, where failure to express the appellant's intention is due to a typographical error or other inadvertence, an appeal ought not to be dismissed on the ground that the notice of appeal is too broad, unless the respondent has been deceived and prejudiced.

▆ In the instant case, we do not believe that respondents were deceived or prejudiced by this inadvertence. They knew that she, being single at the time of the accident, was not "aggrieved" within the meaning of Rem. Rev. Stat., § 1716 [P.P.C. § 5-1], by the judgment in favor of respon-

dents on Donald Wisbey's cross-complaint. Hence it must have been apparent to them that the notice of appeal was intended only to put in issue respondents' judgment against appellant on the latter's cross-complaint. To dismiss the entire appeal under these circumstances would contravene Rem. Rev. Stat., § 1734, which provides that no appeal shall be dismissed for any informality or defect in the notice.

■ Respondents also contend, however, that, if the appeal is intended to be from only the part of the judgment by which appellant alone is adversely affected, then the notice is insufficient under Rem. Rev. Stat., § 1719 [P.P.C. § 5-11]. This section provides in part as follows:

". . . The appellant in his notice of appeal shall designate with reasonable certainty from what judgment or orders, whether one or more, the appeal is taken, and if from part of any judgment or order, from what particular part."

Except for appellant's inadvertence, referred to above, the notice of appeal would have designated the precise part of the judgment from which the appeal is taken. As actually worded, the notice also included the part of the judgment which was adverse to defendant Donald Wisbey. For the reasons indicated above, respondents were not deceived by this mistake. Nor was defendant Donald Wisbey prejudiced, since at most the notice of appeal undertook only to review a part of the judgment which was adverse to him. Accordingly, the technical failure to comply fully with this statutory provision does not warrant dismissal of the appeal.

As their second general ground for dismissal of the appeal, respondents point out that defendant Donald Wisbey has not joined in the notice of appeal, nor has the notice of appeal been directed to or served upon him, nor has the cost bond on appeal named him as an obligee.

■ Rem. Rev. Stat., § 1720 [P.P.C. § 5-13], provides that the notice of appeal shall be served ". . . upon all parties who have appeared in the action or proceeding . . ." This court has construed the statute to require service of notice of appeal only upon those parties to the record whose interests might be adversely affected by the decision

of the court on appeal. *United Truck Lines v. Department of Public Works,* 181 Wash. 318, 42 P. (2d) 1104; *Deno v. Standard Furniture Co.,* 190 Wash. 1, 66 P. (2d) 1158; *State v. Williams,* 5 Wn. (2d) 419, 105 P. (2d) 723. The same rule has been applied in determining to whom the appeal bond must run. *Edwards v. Bounds, supra.*

Respondents argue further that, although a party may not be adversely affected, it is necessary that he be included in the appeal so that the same case may not appear in the appellate court piecemeal. *Cole v. Washington Motion Picture Corp.,* 112 Wash. 548, 192 Pac. 972, is cited as authority for this view.

The rule in question is stated in the *Cole* case as follows:

"This court has held that the object and purpose of the legislature was to require all interested parties to jointly prosecute their appeals and cross-appeals, so that the same cause might not appear in the appellate court by piecemeal. *Sipes v. Puget Sound Elec. R. Co.,* 50 Wash. 585, 97 Pac. 723. It held in the same case, and has held in later cases, that this object was accomplished when all parties who appeared in the action and whose rights in the judgment or order appealed from could be *adversely affected* by the action of the appellate court were served, even though a party may be omitted who would be included by a literal interpretation of the statute." (p. 551) (Italics ours.)

It is thus apparent that the "piecemeal" rule relied upon is applicable only where the action of the appellate court may adversely affect the party who has not been served with the notice of appeal. See, also, *Mogelberg v. Calhoun,* 94 Wash. 662, 163 Pac. 29; *Metropolitan Club v. Massachusetts Bonding & Ins. Co.,* 127 Wash. 320, 220 Pac. 818.

Hence, all of these contentions, presented under respondents' second ground for dismissing the appeal, are without merit unless we find that Donald Wisbey could be adversely affected by this appeal.

In our view, he could not be adversely affected by this appeal. The notice of appeal did not purport to review any part of the judgment wherein he had *prevailed.* At the

most, as pointed out above, the notice undertook only to review a part of the judgment which was adverse to him. A review of that part of the judgment might have led to favorable results in so far as he was concerned. It could not have led to more unfavorable results than he had sustained under the trial court judgment.

Nor could Donald Wisbey be adversely affected by the appeal in so far as it seeks a review of respondents' judgment against appellant on the latter's cross-complaint. As to this cross-complaint, Donald Wisbey and appellant have no common or adverse interests. They were not husband and wife when the accident occurred. They filed separate answers and cross-complaints. The court instructed the jury that any recovery by appellant would constitute her separate property. The court called for and received separate verdicts.

The motion to dismiss the appeal is therefore denied.

The court, in three instructions, submitted to the jury the question of whether or not Mrs. Wisbey was guilty of contributory negligence. The court also declined to give appellant's requested instructions Nos. 9 and 17, which would have withdrawn from the jury the question of Mrs. Wisbey's contributory negligence. These rulings were duly excepted to and are assigned as error on this appeal.

It is appellant's contention that there was no substantial evidence upon which the jury could decide that there was contributory negligence on the part of appellant. Because of this lack of evidence, appellant asserts, the trial court should have determined, as a matter of law, that Mrs. Wisbey was not guilty of contributory negligence, and should have so instructed the jury. Respondents, on the other hand, contend that there was evidence sufficient to call for the submission of the question of contributory negligence to the jury.

The question of contributory negligence is ordinarily one of fact to be decided by the jury. However, this question may be determined as a conclusion of law in two classes of cases: (1) Where the circumstances of the case

are such that the standard of duty is fixed and the measure of duty defined by law, and is the same under all circumstances; and (2) where the facts are undisputed and but one reasonable inference can be drawn from them. *McQuillan v. Seattle*, 10 Wash. 464, 38 Pac. 1119, 45 Am. St. 799; *Chadwick v. Ek*, 1 Wn. (2d) 117, 95 P. (2d) 398; *Richardson v. Pacific Power & Light Co.*, 11 Wn. (2d) 288, 118 P. (2d) 985.

There is here no element of a legally fixed standard of care. The question before us, therefore, is whether or not the case comes within the second exception noted above. With this question in mind, we turn to an examination of the allegations as to contributory negligence, and the evidence tending to support those allegations.

As before stated, appellant was riding as a guest in the front seat of Donald Wisbey's car. That car was overtaken by respondents' automobile on a dark and somewhat foggy night, and the collision resulted. Respondents instituted the action. Their only allegation of negligence against Donald Wisbey was that he unlawfully permitted his white backup light to remain illuminated while his car was proceeding forward. Respondents alleged that they were misled by this into believing that Wisbey's car, with only one headlight burning, was approaching them on the opposite side of the highway.

The particular conduct of appellant guest, which respondents contend was contributory negligence, is indicated by this statement contained in respondents' brief:

"It is submitted that under the evidence, it was a jury question as to whether (1) the appellant saw the light in illegal use and (2) whether in the exercise of ordinary care under the circumstances she should have seen its illegal use, and (3) whether thereafter she should have protested or warned the driver."

The proposition as so stated is a correct summary of the questions confronting a court or jury when the contributory negligence of an automobile guest is placed in issue. See *Bauer v. Tougaw*, 128 Wash. 654, 224 Pac. 20.

The undisputed testimony bearing upon these allegations of negligence may be briefly summarized. The so-called

"backup" light was slightly smaller than a headlight. It was attached to the back of Wisbey's automobile on or near the left rear bumper. It gave the same color of light as a regular headlight, and cast a light some fifty feet in the rear. It was designed to aid the driver while backing his car in the dark. After dark on the night of the accident, Wisbey used this backup light in backing out of the one-hundred-forty-foot single lane private driveway of his parents. It was fairly foggy at the time, which tended to diffuse the light coming from the backup light. While backing the car out of the driveway, Wisbey had his left-hand front door open, and was looking back.

Wisbey failed to turn off the backup light after he had backed onto the main highway and had started forward. It remained on until the accident, which occurred after his car had traveled some six or seven hundred feet along the main highway. At this point and while the Wisbey car was still moving forward, it was run into by the Coleman car coming up from the rear. Wisbey testified that he looked in his rear view mirror once or twice after he started forward on the main highway, but did not see that his backup light was on. Appellant did not recall, at the trial, whether she had seen that the backup light was on when she inspected the rear of the car immediately after the accident.

Mrs. Wisbey testified on cross-examination as follows:

"Q. And when you got out there to get in the car it was dark? A. Yes. Q. And there was a lot of fog? A. Yes. Q. Now that driveway your husband said was about 140 feet, that is a narrow one track or one lane driveway from the garage out to the highway? A. Yes. Q. And so Mr. Wisbey put the backup light on to show the way out? A. I don't know, I didn't see it. Q. You didn't see that. Did you look out at all when you were backing out that narrow driveway? A. No. Q. Never did? A. I don't think so, I don't remember of it anyway. Q. If you had looked out of course you could have seen the light? A. I don't know. Q. Don't you think you could? A. Well, I don't know, I didn't look. Q. Well, you were looking straight ahead, he was looking through the back, wasn't he? A. Yes. Q. You remember that? A. Yes, he had his door open. Q. He had his door open, looking out the back, but you were looking straight ahead?

A. Yes. Q. The opposite direction from which you were going? A. Yes. Q. You don't know what taillights he had on the car then, do you? A. No; I had seen them before when I was out with him. Q. You didn't see them that night? A. No. Q. When you got out into the highway, when you back out don't you look down the highway to see if there is anything coming when you are backing out into the highway? A. I do now; I might have. Q. That is what I am getting at, you don't know? A. I don't remember if I did or not. Q. But normally you look, a passenger in an automobile? A. Yes. Q. If you had looked down the road you would have seen the backup light on the car? A. I might have, I don't know. Q. You recognize, I suppose, that a guest or a passenger in a car has some responsibility, don't you? A. Well, I don't know. Q. You don't think you have any responsibility about the operation of the car? A. Well, not unless I am a back-seat driver. Q. Not unless you are a backseat driver, I see. If you had seen the backup light on you would have told your husband about it, wouldn't you? A. Sure. Q. And he would have turned it off right quick, wouldn't he? A. Yes. Q. Well, you would have felt responsible to tell him about it if you had seen it, wouldn't you? A. Yes, if I had seen it, but I didn't. Q. Now as you drove along the highway did you look out the back at all? A. No. Q. Did you know or pay any attention to whether or not he had turned off the backup light? A. No. Q. Do I understand you to say you didn't know that he ever had it on? A. No, I didn't. Q. You didn't know he ever turned it on? A. No. I know he opened the door. Q. Pardon? A. All I know is he opened the door of the car and looked out. Q. Had you ridden in the car before? A. If I did it was in the daytime. Q. Did you know it had a backup light on? A. I don't know. Q. Pardon? A. I don't think so. Q. How many times had you been traveling in the car with Mr. Wisbey? A. Well, I don't know, the only time I can remember is when the folks invited me to go with them to Mt. Rainier. Q. Do you want to tell the jury you didn't know that night any time he had a backup light on? A. That is the truth. Q. Even when he was backing out of the driveway? A. That is the truth, that is all I can say."

There is nothing in appellant's testimony, or in the other evidence above recited, which even tends to show or has any probative force in establishing that appellant knew that the backup light was on. Appellant, on cross-examination, six times stated, without equivocation, that she did not

know that the backup light was on at any time prior to the accident. She stated that she did not see Wisbey turn on this light, and did not see the light itself. There is no contrary testimony on these points.

Mrs. Wisbey further testified that she did not look back at any time prior to the accident. Accordingly there is no room to apply the rule that one will not be heard to say that he looked but did not see what was plainly there to be seen. It is doubtful, in any event, if this rule could apply here. There is no substantial evidence to indicate that the backup light, on the night in question, would have been plainly visible to a passenger sitting in the front seat of Wisbey's car and looking back through the rear window.

The undisputed testimony being that appellant did not see the backup light in illegal use, the only remaining question is whether, in the exercise of ordinary care under the circumstances, she should have made such observations as would have caused her to see the backup light in illegal use.

In our opinion, a passenger, under the circumstances of this case, has no duty to look through the rear window or to peer back out the right-hand door window. (The rear view mirror is not ordinarily placed in such position that a person other than the driver can make use of it for the purpose of seeing through the rear window.)

Such a duty could not arise unless and until some situation developed which would put her on notice, as a reasonably prudent person, that some danger in the rear called for her personal attention. The undisputed facts, summarized above, indicate that no such situation was presented. While the car was being backed down the driveway, she observed that Wisbey had his door open and was looking back. She therefore had reason to believe that he was giving proper attention to his driving. She had no reason to believe that it would be necessary or helpful for her also to look back. He did negotiate the backing-up operation without incident, thus establishing that Mrs. Wisbey's assistance was not required.

The illegal use of the backup light did not begin until the car reached the main highway and had started forward. It was then less than ever necessary for Mrs. Wisbey to look back. The possibilities of danger, so far as she knew, were then in front and not behind.

The instant case is to be clearly distinguished from the headlight cases, such as *LeDoux v. Alert Transfer & Storage Co.,* 145 Wash. 115, 259 Pac. 24. There the plaintiff, riding as a guest on a motorcycle, was at all times aware that the headlight threw a beam only twenty or thirty feet, whereas the statute required a light showing rays visible for five hundred feet. We held that the guest was guilty of contributory negligence as a matter of law, saying that he knew, or would be conclusively presumed to know, that the vehicle was operated in violation of a positive law of the state. See, also, *Allen v. Porter,* 19 Wn. (2d) 503, 143 P. (2d) 328; *White v. Cochrane,* 189 Minn. 300, 249 N. W. 328; *Rebillard v. Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.,* 216 Fed. 503; *Talbot v. Taylor,* 184 Tenn. 428, 201 S. W. (2d) 1; and *Scruggs v. Baltimore & Ohio R. Co.,* 287 Ill. App. 310, 4 N. E. (2d) 878. In all of these cases the fact was either undisputed or established by substantial evidence, that the guest saw or was in a position to see the defective headlights.

In the taillight cases it is generally held that the guest is not chargeable with contributory negligence, there being placed on the guest no duty of making a prior inspection of such equipment. *Yates v. Brazelton,* 108 Cal. App. 533, 291 Pac. 695; *Howell v. Murdock,* 156 Va. 669, 158 S. E. 886. A different result is reached, however, where the guest has actual knowledge that the vehicle is not equipped with a taillight. *Thompson v. Bell,* 129 F. (2d) 211. But the taillight cases are not particularly helpful here, because in those cases there is never a contention that a passenger sitting in the automobile did or could observe the defective taillight. No court decision has been found involving the question of a passenger's contributory negligence in failing to see and warn the driver regarding illegal use of a backup light.

■ It is our conclusion, for the reasons stated above, that there was no substantial evidence that appellant ac-

tually saw the backup light in illegal use, and no duty upon her, under the circumstances of this case, to make the observations which would have caused her to see such illegal use. Accordingly the trial court should have determined, as a matter of law, that appellant was not guilty of contributory negligence. It was therefore error to submit that question to the jury, and to decline giving one or the other of appellant's two requested instructions, which would have expressly withdrawn that question from the jury.

The judgment is reversed and the cause remanded, with instructions to grant appellant a new trial.

SIMPSON, C. J., ROBINSON, MALLERY, and HILL, JJ., concur.

