Argued December 7, 1934; affirmed January 29, 1935

# BIRKEMEIER *v.* KNOBEL ET UX.

(40 P. (2d) 694)

*W. K. Royal,* of Portland, for appellants.

*Arthur H. Lewis,* of Portland (Neal R. Crounse and Lewis & Finnigan, all of Portland, on the brief), for respondent.

ROSSMAN, J. Since four of the assignments of error are based upon rulings concerning the pleadings, we shall now briefly review the averments affected by these charges. The complaint alleges:

"At the time plaintiff commenced to furnish material and labor in the construction of said building as hereinafter described, defendants were and now are owners of said building * * *; the construction of said building was being done at the instance and request of said defendants; between August 1, 1932 and January 15, 1933, plaintiff herein, at the special instance and request of the defendants, furnished material and labor necessary for the construction of and which was used in the construction of said building, situated upon said premises; and that the reasonable price for said material and labor thus furnished and used * * * was $5,387.39 and there now remains due and owing the sum of $4,093.69; plaintiff herein, on March 1, 1933, and within 60 days from the completion of his furnishing material and labor in the construction of said building, filed with the county clerk of Multnomah County, Oregon, the county in which said building is located, a claim of lien * * * a copy of which lien is hereto attached marked Exhibit 'A' and as such made a part of this complaint."

From the lien notice, we quote:

"Said materials were furnished and said labor was performed between the dates of August 1, 1932 and January 15, 1933, and the contract and reasonable price thereof was and is the sum of $5,358.39 * * *. The following is a true and correct statement of said account * * *:

Mr. and Mrs. John Knobel:
In account with Kenneth Birkemeier,
To contract price of John Knobel
residence _____$4,975.00
Additional charge for playroom _____ 65.00"

The answer admits that the plaintiff furnished material and labor in the construction of the building, at the request of the defendants, but denies all other allegations. It alleges:

"On the 5th day of August, 1932, plaintiff and the defendants entered into a certain contract for the construction and erection of the building known as 732 Regents Drive, Portland, Oregon, * * * for the sum of $4,975.00 plus $65.00 for a playroom in basement, and $200.00 for oil burner, a copy of which contract is hereto attached * * *; that plaintiff has not complied with said contract or performed the terms thereof on his part to be performed in that he has not constructed said building according to the plans and specifications * * *."

Here follows a list of alleged breaches. A second affirmative defense alleges:

"It is provided by the terms of said contract existing between plaintiff and defendants for the construction of said building that the contractor would carry said building for a period of fifteen days after said house was completed."

The remaining averments allege that the defendants are ready, willing and able to make full payment of the contract price upon plaintiff's completion of the house.

The opening paragraph of the contract to which the answer refers states:

"This agreement made and entered into this 5th day of August, 1932, between Kenneth Birkemeier, hereinafter known as contractor, and Mr. and Mrs. John Knobel, hereinafter known as owners, 732 Regents Drive, Portland, Oregon, witnesseth: * * *"

The remaining parts of this instrument bind the plaintiff, as contractor, to build a dwelling house for the defendants at the above designated place for the sum of $4,975, according to the plans and specifications mentioned in the contract. The contract also incorporates a provision whereby, for the additional sum of $65, the plaintiff agreed "to finish playroom". We quote further from the contract the following provision:

"If any defects, shrinkage or other faults appear within twelve months from the completion of the building arising, in the opinion of the designer, from materials unworkmanlike, not in accordance with the drawings or specifications or the instructions of the designer, and any damage by frost appears within a like period, the contractor shall, upon direction of the designer, and within such reasonable time as shall be specified therein, make good, at his own cost, such defects, shrinkage or other faults, and, in the event of his failure to do * * *."

The reply admits as true the paragraphs of the answer which aver that, on the 5th day of August, 1932, the parties executed the above-mentioned contract. It denies that the work was defectively done, and that the plaintiff failed to complete performance of his contract. The reply also avers:

"Plaintiff not only completed his contract with the defendants in a first-class workmanlike manner, but in addition to the plans and specifications, performed the following extra work * * *."

Here follows a detailed recital of several items amounting to $147.39.

During the course of the trial plaintiff's counsel declared: "I told you that we are standing on the contract at the opening of this case", and later was permitted to amend the portion of the complaint previously quoted which starts with the words: "That between August 1st, 1932 and January 15th, 1933" so that the averment read:

"That between August 1st, 1932 and January 15th, 1933, plaintiff herein, at the special instance and request of the defendants, furnished material and labor necessary for the construction of, and which was used in the construction of said building situated upon said premises in accordance with plaintiff's contract with defendants, dated August 5th, 1932, for construction of said building. That plaintiff, at the special instance and request of the defendants, furnished additional material and labor in the construction of said defendants' building of the reasonable value of $147.39; that no part thereof has been paid, except the sum of $1,293.70, and there now remains due and owing the sum of $4,093.69."

After the amendment had been made defendants interposed an oral demurrer to the pleading upon the theory that, in its amended form, it failed to state a cause of action. It was overruled.

August 5, 1932, the plaintiff, an architect-builder, and the defendants, as owners, executed a contract wherein the plaintiff agreed to erect for the defendants a dwelling house upon a lot described in the contract, and the defendants bound themselves to pay therefor "the sum of $4,975.00, with additional cost of $65.00 to finish playroom". The contract required the plaintiff to build the house according to the plans and speci-

fications accompanying the contract. One of the provisions of the specifications is the following:

"General contractor shall, at his own expense, make good and amend any defects, settlements, shrinkages or other faults in his work arising from defective or improper materials or workmanship furnished by him which may appear within one year after completion of his contract."

Defendant John Knobel was not entirely ignorant of building and construction work. According to his testimony: "A long time ago I worked for the Northern Pacific as chief draftsman and assistant engineer on maintenance and rod man and chainman and a few other things." During the construction of this house he inspected the work frequently. He testified: "The inspection trips were so numerous it would be pretty hard for me to tell just which particular item was checked over at any one particular time." Concerning the plaintiff's attitude, Knobel testified: "He wanted to please me and he was anxious that I should tell him about these things" (faults that he found). About January 15, 1933, the plaintiff claimed that he had completed performance of his contract, and at that time the defendants went into possession and have been living in the house ever since. On or about January 11, 1933, defendants gave the house a final inspection. The plaintiff described this incident thus: "The defendants, on inspecting the building daily, also gave it a very thorough final inspection which took place during this week, and the first day of his final inspection he gave us a list of items which, to his opinion, were not quite what they might be, and I made a note of them which I could probably quote the list, and we took care of each item, item for item, and checked them off of our list, and after this was done by a special appointment with one man,

a sub-contractor, and my brother and myself and Mr. and Mrs. Knobel, we went over the house and he gave us a very high compliment on the satisfaction we had given with our work and said that the house was all right in every respect. And Mr. and Mrs. Knobel had some friends there, and they introduced me as the builder, and, 'if you folks are interested in a home, here is the man for your job'.'' The defendants admit that the house was given a careful inspection about the middle of January. Knobel testified that during the course of the inspection the plaintiff made a list of the defects upon a board, and that the plaintiff ''had to touch up this and touch up that and replace some of the bum concrete, things like that''. At the same time the heating sub-contractor returned to the house in company with the city furnace inspector and, pursuant to suggestions offered by the latter, an adjustment was made of the pipes leading from the furnace so that heat would be supplied in a more satisfactory manner to two rooms concerning which the defendants had made complaint. After these inspections and adjustments the defendants endeavored to procure a mortgage loan upon the property so that they could pay the plaintiff the sums owing, but found this difficult because of a prolonged bank holiday. The defendant testified that he accompanied his expressions of willingness to pay with a demand that the plaintiff complete performance of his contract. The plaintiff's demands for payment became more insistent, and on March 1, 1933, he filed the lien notice previously mentioned. Thereupon the defendants quickened their efforts to obtain a mortgage loan, and on April 6 declared that they had found a willing lender. At that time defendants' attorney informed the plaintiff's attorney, who had already prepared the foreclosure complaint: ''We were ready to shoot as soon

as we could arrange these minor details relative to finishing the work.'' According to the plaintiff, he was badly in need of money, was convinced that the defendants were not acting in good faith, and accordingly filed the complaint in the present suit April 6, 1933. The negotiations between the parties, nevertheless, were continued for some time, but ultimately were abandoned.

During the course of the conferences which preceded the filing of the complaint, the plaintiff requested the defendants to furnish a list of the items which they claimed were defective or incomplete. The defendants never supplied such a list, stating that the plaintiff was well aware of these items. In preparation for the trial, the defendants employed an architect and three building contractors to make a thorough inspection of the house. They compared the results with the requirements of the plans and specifications. The alleged defects which we shall mention are largely the result of the findings of these men.

The following, quoted from the defendants' brief, states the essence of the assignments of error:

''1. It was error for the trial court to hold that plaintiff's notice or claim of lien was not prematurely filed.

''2. It was error for the Circuit Court of the State of Oregon to refuse to hold that plaintiff's suit was prematurely instituted.

''3. It was error for the court to find and decree that the plaintiff had substantially completed his contract at the time of commencing said suit or at any time subsequent thereto.

''4. It was error for said court to hold that there was not a material variance between the notice of mechanic's lien and the allegation of the original complaint.

"5. It was error for the court to find that the pleadings were sufficient to sustain a foreclosure of plaintiff's lien.

"6. It was error upon the part of the court to overrule defendants' demurrer to plaintiff's complaint and to permit the introduction of evidence by plaintiff over the objections of defendants.

"7. The court erred in not dismissing plaintiff's complaint and denying the foreclosure of said mechanic's lien."

In support of the first three assignments of error, the defendants direct attention to the fact that while the lien notice was filed March 1, 1933, the plaintiff returned to the building on April 4 and spent about a half day painting a part of the house; that on April 25 he again returned, tore up the cement driveway leading to the garage and replaced it with new cement; and that on April 26 he installed a tile drain to take care of the seepage water around the basement walls. They contend that the plans and specifications imposed the following requirements upon the plaintiff and that he did not comply with them: installation of an ash dump in the fireplace and a clean-out in the fireplace flue; application of paint to the inside of the gutters, the iron lintels of the first-story windows and upon the lower edge of the siding; installation of a downspout for the front gable gutter, and nailing down the quarter-round in the kitchen. They also contend that the plaintiff's performance of his contract was defective in the following particulars: a short section of the mahogany quarter round was not properly stained; the garage doors were improperly hung; the height of the ceiling of the basement party room is six feet, nine inches instead of seven feet; the opening of the first-story fireplace is three feet, four inches instead of four feet, and one of the gutters has developed a leak. They contend

that the workmanship is defective in the following particulars: some of inside painting is not uniform in color and application; the edges of some of the doors are not enameled; the concrete work of the main steps is rough and the risers and treads are not of uniform dimensions; and the black iron stair railing is fastened with bright-headed screws. The answer recites other alleged defects, but, since they are not mentioned in the compilation set forth in defendants' brief, we assume that defendants are not insisting upon them.

■ The plaintiff testified that the concrete driveway was laid during frosty weather with the result that the cement finish coat did not unite perfectly with the concrete underneath. He also testified that he relaid this driveway under a belief that the maintenance clauses of the contract and specifications which we have previously quoted required him to do so. We believe that his explanation was made honestly and that this replacement, which he performed on April 25, should not be deemed an indication that his contract had not previously been completely performed. April 26 the plaintiff again returned and installed some drain tile to divert seepage waters from the basement walls. Neither the contract nor the specifications required him to do this work, and, hence, its gratuitous character cannot be deemed an indication that the contract had not previously been fully performed. See annotation accompanying *Badger Lumber Co. v. Parker,* 85 Kan. 134 (116 P. 242, 35 L. R. A. (N. S.) 901).

■■ The contract, plans and specifications, in our opinion, did not require the plaintiff to install a cleanout in the fireplace flue, paint the inside of the gutters, paint the iron lintels, nor install a downspout for the 16-inch section of gutter mentioned by the defendants. The evidence indicates that in two or three places short

sections of the lower edge of the siding upon one of the gables were not covered with paint. None of these sections is more than 18 inches long, and, of course, is not wider than the lower edge of the siding. While the quarter round in the kitchen has not been permanently fastened, the evidence indicated that such work is not done until the linoleum has been laid and the owner has requested the contractor to fasten the quarter round. The evidence indicates that a short section of the Philippine mahogany quarter round, about eight feet in length, did not take the stain in the same manner as the other material. It also indicates, however, that one can not accurately foretell the degree to which the stain will affect such soft wood. The manner in which the runners were fastened to the garage doors, which appear to be of an unusual and expensive type, has proved to be improper. The fact that the doors were hung in wintry weather is, in part, responsible for the defect which has manifested itself. According to the testimony, a satisfactory result can be obtained at an additional expenditure of about $10. The evidence indicates that an ash dump was provided for the fireplace, but that it somehow became lost. This omission is, however, of slight consequence because the plans and specifications did not require the plaintiff to provide the fireplace flue with a clean-out. None has been installed, and a clean-out cannot be provided because the lower end of the flue terminates in the basement party room immediately alongside of a fireplace. The complaint's only criticism of the concrete main steps avers that the concrete ''is crumbling, cracking and breaking up, top of front steps hollow. Inferior mix crumbles''. The evidence indicates that this charge is not true. Witnesses testified, however, that the cement finish is broken in places, but that this is due to the carelessness of the

gardeners who built the rock garden. Some evidence also indicates that the risers and treads are not uniform. However, we ignore this criticism because the complaint, which is very detailed and specific, makes no mention of it. The leak in one of the gutters or tin work over the front door is due to a nail hole. Apparently this defect was not mentioned until the answer was filed and clearly does not prove that the house was incomplete when the lien notice was filed. The plaintiff frankly conceded that the above-quoted maintenance clauses of his contract requires him to remedy this defect.

The plans indicate that the opening of the living room fireplace should be four feet. As built, the opening is three feet, four inches. This change was made after the defendant had requested the plaintiff to install, as an extra item, a fireplace in the basement party room immediately below the living room fireplace and connecting with the same chimney. The plaintiff testified that before he proceeded he informed Knobel that it would be necessary to reduce the size of the living room fireplace opening, and that he acquiesced. The defendant denied this. However, in answer to the question, "Does the fireplace look in proportion to the room?" Knobel replied "Yes, it certainly does. I have no objection to that." The defendants said nothing about the reduced size of the fireplace opening until their contractor and architect witnesses had made the inspections previously mentioned. One of the contractors whom they sent to inspect the house testified that the fireplace as built is not out of proportion to the dimensions of the room and, in answer to the question "It looks well in the room, doesn't it?" replied "It does". Another of these builders estimated that to rebuild the fireplace so as to give it a four-foot opening

would cost $200. But, in reply to the question "Do you think that the fireplace as constructed in the living room is out of proportion at all?" replied "I think it is better as it is". He added that, in his judgment, the value of the house had not been depreciated by the reduced size of the fireplace opening. Defendants' other witnesses expressed no opinion concerning the appearance of the fireplace as built. If the defendants have any thought of increasing the size of the fireplace opening to four feet they made no mention of it during the course of the trial.

The plans provide for a basement party room under the living room and indicate that the ceiling of the room should be seven feet above its cement floor. After these plans had been drafted the defendants requested the plaintiff to make the living room floor a step lower than the floors of the other first-story rooms. Apparently when this change was ordered construction work had already begun, and, after the living room floor was dropped, the party room ceiling was lowered from its intended height of seven feet to its present height of six feet, nine inches. The plaintiff testified that when this alteration was in contemplation he informed the defendant that it would be impossible to secure a seven-foot ceiling for the party room, and that the defendant replied that a lowered ceiling would be satisfactory because "the party room was an inferior room and not as important as the living room". The defendant testified that shortly after the first story timbers had been put in place he noticed that the party room ceiling "was a little bit shallow and I took a yard stick or something and measured it", thereby confirming his surmise. He then said that he discussed the matter with the plaintiff, telling him, "Personally, I had no objection to the matter, providing he could get by with the city building

ordinance". The provisions of the building ordinance are not disclosed by the record and even defendants' witnesses were not sure that the ordinance required a seven-foot ceiling for the party room. The building inspector raised no objection to the height of this ceiling. Defendants' witnesses testified that in order to increase the height of this ceiling to seven feet will necessitate a removal of the present cement floor and then, after an additional three or four inches have been excavated, a new floor will have to be laid at a total expense of from $200 to $250.

The evidence indicates that the inside painting and varnishing is not as good as it should be. Apparently the enamel has not been uniformly applied and the varnishing of the mahogany woodwork has not been done in a workmanlike manner. Apart from these defects, the plaintiff constructed for the defendants a good house. The aforementioned architect stated: "The appearance of the house is generally very good." The reason for the defective painting appears to be that the plaintiff took this job at a price which was too low, and, as he approached the end of his work, began to skimp. Concerning the contract price, one of the defendants' witnesses testified: "He got it cheaper than I could build it. I know that." And another, in response to the question, "The contract price for the construction of this house was $4,975.00, the owner has got practically that value, hasn't he?" replied, "I should think he had, and then some." However, the defective painting and varnishing appears only in obscure places like the aforementioned shoe molding, edges of doors, insides of closets and built-ins. The testimony indicates that the defectively stained shoe molding and the improperly painted edges of the doors can be remedied at a cost of $8 or $10, but does not reveal how much ex-

pense will be incurred in re-treating the rest of the improperly covered surfaces.

Accordingly, if we are to say that the plaintiff had not substantially performed his contract on March 1, 1933, when he filed the lien notice, the conclusion must be based upon the following facts: (1) the garage driveway developed defects; (2) a short section of shoe molding was imperfectly stained; (3) the garage doors were improperly hung; (4) the lower edge of the siding in two or three places was not painted; (5) the kitchen quarter round was not fastened in place; (6) the gutter over the front door developed a leak; (7) the living room fireplace ash dump became lost before defendants were placed in possession; (8) the fireplace opening is three feet, four inches wide instead of four feet; (9) the basement ceiling is three inches lower than the plans require; (10) the enameling and varnishing are not uniformly of as good workmanship as they should be; and (11) the plaintiff spent a half day in painting a part of the exterior on April 4.

One of defendants' witnesses volunteered the statement: "I want to say this, in fairness to everybody, that there never was a job you couldn't find some fault with." It seems to us that some of the 11 defects above enumerated were discovered as the result of a determined effort to find fault.

Section 51-105, Oregon Code 1930, provides:

"It shall be the duty of every original contractor, within sixty days after the completion of his contract * * * to file with the county clerk of the county in which such building or other improvement, or some part thereof, shall be situated, a claim * * *."

Section 51-107, Oregon Code 1930, provides:

"No lien provided for in this act shall bind any building, structure, or other improvement for a longer

period than six months after the same shall have been filed unless suit be brought in a proper court within that time to enforce the same. * * *"

■■ If the evidence above reviewed indicates that on March 1, 1933, the plaintiff had not substantially completed the performance of his contract, his lien notice was filed prematurely, and therefore was ineffective to create a lien in his favor: *McComb v. Cogswell,* 140 Or. 676 (15 P. (2d) 716); and *Maynard v. Lange,* 71 Or. 560 (143 P. 648, Ann. Cas. 1916E, 547). This court, as well as others, has several times undertaken to define the meaning of the term "substantial performance". The best definition given by this court is the following one, provided by Mr. Justice BEAN in *Pippy v. Winslow,* 62 Or. 219 (125 P. 298):

"The substantial performance of a contract like the one in question permits only such omissions and deviations as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, can be conveniently remedied, and may, without injustice, be paid for by deductions from the contract price. Where the contractor fails to perform a considerable part of the work required by the contract, his failure, irrespective of whether his intentions were good or bad, constitutes a bar to his enforcement of a lien for the work performed. If the defects show that the contractor performed the work in a slovenly and improper manner, not conforming substantially with the plans and specifications and thereby defeating the intentions of the parties to have the work done in a particular manner, the contractor, unless there has been a waiver, cannot enforce a lien. The willful omission, though in an unimportant respect, will preclude the assertion of a lien by him. The spirit of the contract should be faithfully observed, though the letter thereof fail."

In the extensive annotation which appears in Ann. Cas. 1916E, 549, the editor states the rule of substantial

performance in language similar to the above, and follows his statement of the rule with digests of many decisions which illustrate the application of the rule.

 Had the plaintiff neglected to lay the cement driveway, to hang the garage doors, to build the basement party room and paint the interior woodwork, the rule which requires the contractor to substantially complete performance of his contract before he files a lien notice would very likely demand a conclusion that the plaintiff filed his notice prematurely. But the aforementioned 11 items were not omitted from the construction work; they were imperfectly done. Eight of these items are within the maintenance provision of the contract. The first of these 11 items has already been remedied, and it seems reasonable to believe that the plaintiff would have remedied the other seven had they been called to his attention. Minor defects, due to inadvertence, and which can readily be rendered, are generally termed repair items. They do not affect the time for filing a lien notice: *Avery v. Butler,* 30 Or. 287 (47 P. 706). The eighth, ninth and tenth items concern the living room fireplace, the height of the basement ceiling and the painter's work upon the interior woodwork. We believe that the defendants are not dissatisfied with the fireplace. As a witness, Knobel merely called attention to the fact that the opening is three feet, four inches, instead of four feet. He expressed no displeasure with that fact. To the contrary, he testified that the fireplace looks well and that he has no objections to its proportions. His wife, the other defendant, did not testify. The trial judge declared: ''Apparently the size of the fireplace is a trivial matter as viewed by the witnesses, the plaintiff and the defendants, and no damage has been done to the building due to the change.'' Certainly no damage has been proved. This item does not indi-

cate that the contract was not substantially performed when the lien notice was filed. Defendants' objections to the height of the party room ceiling and to the painter's workmanship were not specifically mentioned until after this suit had been filed and the defendant had hired the aforementioned architect and contractors to compare the results with the requirements of the contract. Prior to that time the defendants had gone into possession and one of them (the husband) had stated that he would be satisfied with the party-room ceiling as built if the building inspector presented no objections. The only specific objection which we find that the defendant had offered to the painting work, prior to taking possession, concerned the eight-foot piece of mahogany quarter round previously mentioned.

It seems to us that the plaintiff's failure to provide a seven-foot ceiling for the party room, a four-foot opening for the fireplace, and to do all of the inside painting work in a uniformly workmanlike manner was not due to bad faith. We believe that, throughout, the plaintiff was trying to please the defendants; in fact, one of them expressly so declared. Plaintiff's conduct convinces us that he was trying to do the work well and at the same time give the defendants the benefit of low cost. His action in departing from the plans concerning the fireplace opening and the ceiling height is easily understandable. He not only had the construction contract but had also prepared the plans and specifications. Owners indicate to the designer their wishes in only a general sort of way and expect the designer to translate these general instructions into specific details. When the defendants requested that the construction work be altered so that a second fireplace would be attached to the chimney, and the plaintiff discovered that to do so would necessitate a reduction in the living room fire-

place opening, he very likely assumed that, as designer, he had authority to change the size of the opening from four feet to three feet, four inches. His mistake does not convince us that he acted in bad faith, nor does it demand a conclusion that he failed to substantially complete his contract. The reduced height of the party-room ceiling, we believe, was due to a similar error. In fact, here he had the defendants' conditional approval. The condition upon which the approval was given, that is, rejection by the building inspector, never occurred. Nevertheless, the circuit court decree deducts from the contract price the sum of $250, being the maximum amount which the defendants' witnesses testified would be required to give a seven-foot ceiling.

Without proceeding to further analyze the three defects under consideration, we express our belief that they do not indicate that the plaintiff had failed to substantially complete his contract before he filed the lien notice. Such being our conclusion, it follows that the first three assignments of error reveal no merit.

The fourth assignment of error is predicated upon a contention that a material variance exists between the mechanic's lien notice and the allegations of the original complaint. It is not based upon any belief that a variance exists between the proof and the pleading. If defendants' contention is correct, the result which would follow, according to well-established rules, is that the exhibit would control the pleading. The original complaint, as we have seen, made no mention of a contract but averred that the plaintiff built the structure "at the special instance and request of the defendant". The lien notice which was incorporated into the complaint as an exhibit "and as such made a part of this complaint" referred to the contract. The answer stated that the building was built pursuant to a contract dated

August 5, 1932, and attached the contract to the answer as an exhibit. The reply admitted this averment, and to that extent the complaint was aided. It will be recalled that during the course of the trial the plaintiff was permitted to amend his complaint so as to make it allege that the building was built "in accordance with plaintiff's contract with the defendants, dated August 5, 1932". The circuit court did not abuse its power to authorize amendments when it permitted the plaintiff to amend his complaint in the manner stated: *Richardson v. Investment Co.*, 124 Or. 569 (264 P. 458, 265 P. 1117). As amended, there exists no variance between the pleading and the lien notice nor between the pleading and the evidence. This assignment of error, therefore, discloses no error.

The fifth, sixth and seventh assignments of error challenge the sufficiency of the amended complaint as the statement of a cause of suit. Defendants argue that the complaint does not allege performance of the contract on the part of the plaintiff, and that if it does it fails to allege that the plaintiff filed the lien notice within 60 days of completion of performance. The amended complaint repeatedly uses the term "the construction of said building", stating in one place that the house was constructed "in accordance with plaintiff's contract with defendants, dated August 5, 1932, for the construction of said building". This often employed term, in our opinion, denotes the complete erection of the dwelling house; in other words, it states, by inference at least, that the plaintiff completed performance of his contract. The complaint also alleges: "Between August 1, 1932, and January 15, 1933, plaintiff herein, at the special instance and request of the defendants, furnished material and labor necessary to the construction of, and which was used in the construction

of, said building." It also alleges: "Plaintiff herein, on March 1, 1933, and within 60 days from the completion of his furnishing material and labor in the construction of said building, filed" the lien notice. The lien notice attached to the complaint states: "Said materials were furnished, and said labor was performed between the dates of August 1, 1932, and January 15, 1933." These averments, in our opinion, state the facts which the defendants believe are missing. The language is ill adapted to the purpose, and certainly does not meet the standards of a skillful pleader; but the absence of fine technique alone is not fatal.

The above, we believe, disposes of all of the assignments of error. It follows that the decree of the circuit court must be affirmed.

CAMPBELL, C. J., and RAND, BEAN, KELLY and BAILEY, JJ., concur.

BELT, J., not sitting.