Argued October 5, reversed October 22, rehearing denied November 16, 1915.

# CAMP & DuPUY *v.* LAUTERMAN.

### (152 Pac. 288.)

**Exceptions, Bill of—Incorporating Evidence.**

1. Failure to include all of plaintiff's testimony in a bill of exceptions does not prevent hearing the question of nonsuit, since Article VII, Section 3, of the Constitution as amended, is complied with by attaching all testimony to the bill of exceptions.

**Contracts—Performance—Sufficiency—Building Contracts.**

2. Where a contract required a monthly statement of account "covering labor, materials," etc., used in a building, and that "all receipted vouchers" be turned over by the contractor to the owner, the contractor's failure to take vouchers for labor is failure to substantially perform the contract, and he cannot recover an alleged unpaid balance, although canceled checks are offered in lieu of vouchers to show the payments made for labor.

**Payment—"Voucher."**

3. A "voucher" is an instrument that shows on what account, or by what authority, a particular payment of money is made, or that services of payee entitle him to the payment, and canceled checks are not vouchers, as they would not show such existence.

[As to when acceptance of checks constitutes payment, see note in 69 Am. St. Rep. 346.]

**Contracts—Breach—Acquiescence—Injury.**

4. Where plaintiff, a contractor, agreed to furnish to defendant owner vouchers for all labor and material claims paid, and he never secured such vouchers for labor, the fact that defendant was present when laborers were paid, saw that no vouchers were taken, and did not object, does not estop him from setting up the contract, since the plaintiff did not, by reason of such acts of defendant, alter his position to his injury.

From Marion: PERCY R. KELLY, Judge.

Department 1.   Statement by MR. JUSTICE BENSON.

This is an action by Camp & DuPuy, a corporation, against J. H. Lauterman to recover money. The complaint alleges, in substance, that plaintiff and defendant on October 4, 1912, entered into a written agreement which is set out in full as Exhibit A, attached to the complaint, and made a part thereof. The sub-

stance of this contract, so far as it is material here, is that plaintiff was to provide all the materials and perform all the work for the full completion of a residence for defendant. As compensation therefor, it was to retain as a perquisite all cash discounts which might be allowed for the prompt payment of bills for materials, etc., and a cash payment of $500 to be received upon the completion and acceptance of the work. Section 5 of the contract reads thus:

"It is mutually agreed by and between the parties hereto that the owner shall and will between the 1st and 5th day of each and every month be presented with an itemized statement covering labor, materials, etc., contracted during the preceding month and employed in the erection of said building, and upon receipt of such statement shall advance to said contractors a sufficient sum of money to cover same, and before any further money shall be advanced by said owner all receipted vouchers shall be turned over to him for said preceding month."

The complaint further alleges that plaintiff complied fully with the terms of the contract, except that it did not turn over to defendant receipted vouchers for labor, and justifies such failure by an allegation to the effect that it did not, and does not, understand that the terms of the contract require such vouchers; that although defendant knew that plaintiff was not obtaining such vouchers, and did not intend to obtain them, he made no demand therefor, and did not notify plaintiff that it would be asked to furnish them, but continued to make payments provided for in the contract until the two final payments became due; that, after the completion and acceptance of the building, plaintiff and defendant, by his duly authorized agent, went over and examined plaintiff's records and ac-

counts, and that it was thereupon agreed by them that plaintiff had received an overpayment of $61.90 for materials, labor and other expenses incurred, but not including the commission of $500 to be paid to plaintiff by the terms of the agreement; and that there remained due and owing from defendant the sum of $438.10 for which judgment is asked.

Defendant's answer admits the execution of the contract, but denies any liability thereunder by reason of the failure on the part of plaintiff to furnish vouchers for the labor account. He then alleges affirmatively that when he was called upon to make his second payment, he demanded the vouchers for labor, but that plaintiff represented that his manner of transacting business made it more convenient not to present labor vouchers until the close of the contract, or until its final statement should be presented to defendant; that he consented to this change in the terms of the agreement, but that the same remained intact as to all other details; that, relying upon plaintiff's promise to so produce vouchers for labor, defendant paid plaintiff, upon statements presented to him from time to time, a sum in excess of $5,000; that, when plaintiff presented its final statement, it failed and refused to furnish the vouchers for labor, "and its accounts were and are in such a muddle and inaccurate condition that without said vouchers it is impossible to determine what, if anything, this defendant owes plaintiff." Then follow the necessary allegations of a counterclaim which was abandoned at the trial.

Plaintiff's reply, after some denials, admits that it did not furnish to defendant vouchers for labor in the form now demanded, but alleges that it turned over to defendant's authorized agent canceled checks cov-

ering all payments for labor, and that such checks were accepted and retained by defendant. From a judgment for plaintiff this appeal is taken.

REVERSED.

For appellant there was a brief over the names of *Messrs. Bronaugh & Bronaugh* and *Mr. James G. Heltzel,* with oral arguments by *Mr. Jerry E. Bronaugh* and *Mr. Heltzel.*

For respondent there was a brief over the names of *Mr. Willis S. Moore* and *Messrs. McNary, Smith & Shields,* with an oral argument by *Mr. Moore.*

MR. JUSTICE BENSON delivered the opinion of the court.

1. There are several assignments of error, but we deem it necessary to consider only the question as to whether or not the court erred in denying the motion for nonsuit. Plaintiff contends that the question of nonsuit is not before this court by reason of the fact that not all the testimony of plaintiff is included in the bill of exceptions. The entire testimony, however, is attached to and made a part of the bill of exceptions, and since the amendment of the Constitution (Article VII, Section 3), this is sufficient to bring the matter fully before us.

2, 3. It is manifest that there is but one serious issue in the case: Did the plaintiff comply with the terms of the contract sued upon sufficiently to entitle it to recover? Defendant contends that the obligation to furnish vouchers for moneys expended in the employment of labor is an essential element of the agreement, and we think this contention is fully sustained by reading Section 5 thereof. The plaintiff in both complaint and

reply expressly admits that such vouchers were not furnished, and seeks to substitute therefor certain canceled checks, which are simply orders upon a bank for the payment of various sums of money to different persons, without any notation as to the purpose for which they were issued, or upon what consideration. The ordinary meaning of ''voucher'' is a document which shows that services have been performed or expenses incurred. It covers any acquittance or receipt discharging the person or evidencing payment by him. When used in the connection with disbursement of moneys, it implies some instrument that shows on what account or by what authority a particular payment has been made, or that services have been performed which entitle the party to whom it is issued to payment: 4 Words and Phrases, 1215; *First National Bank of Chicago* v. *City of Elgin,* 136 Ill. App. 453, 465. The canceled checks referred to are not vouchers in any sense, as they give no information whatever as to their purpose or connection. It is admitted in the evidence that the labor payments must have amounted to at least $2,000, and consequently there was no question of substantial performance to be submitted to the jury.

4. There is an attempt in the complaint to estop the defendant from demanding the labor vouchers, because he was sometimes present when laborers were paid, and knew that plaintiff was not then taking receipts for such payments, but made no protest. This allegation is not sufficient to constitute an estoppel, since it does not appear therefrom that the alleged acquiescence of the defendant caused the plaintiff to alter its position to its injury. On the contrary, the plaintiff asserts that its failure to secure receipted vouchers

resulted from its interpretation of the terms of the written contract.

The judgment of the trial court will therefore be reversed, and a judgment of nonsuit entered here.

REVERSED.  NONSUIT ENTERED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BURNETT concur.