Submitted on briefs September 4, reversed November 13, 1957

# CULVER *v.* RENDAHL ET UX
### 318 P. 2d 275

*Winslow & Winslow*, of Tillamook, for appellant.

*McMinimee & Kaufman,* of Tillamook, for respondents.

BRAND, J.

This is a suit for foreclosure of a mechanic's lien for materials furnished and labor performed in the remodeling of defendants' house in Manzanita, Oregon, brought by plaintiff Floyd D. Culver against defendants John Rendahl and Marie Rendahl. The lower court denied plaintiff's lien, and he appeals.

The complaint alleged that on or about 22 September 1954 defendants were the owners of certain real property, thereinafter described, upon which there was a residence, and that on or about that date the parties entered into a contract wherein plaintiff contracted to remodel the said residence. The contract was as follows:

"September 22, 1954

"This is an Agreement between Mr. and Mrs. John Rendahl, owners, and Floyd D. Culver, builder.

"Owners agree to pay all costs incurred by builder for labor, material, taxes, sub-contracts, etc. plus 10%.

"All work is to be done in a good workman-like manner. Materials to be of the quality selected by owners.

"Building to be remodeled according to plans furnished by builder and approved by owners.

"Owners to advance builder money for labor and materials as they are due.

"Mrs. John Rendahl
Owner

"Floyd D. Culver
Builder"

The contract was signed by defendant Mrs. John Rendahl, owner, and plaintiff Floyd D. Culver, builder, but not by defendant John Rendahl. It is alleged in

the complaint that plaintiff had fully performed his part of the contract; that the remodeling of the home was completed according to the plans furnished by plaintiff and approved by defendants on 28 December 1954; that the cost of the labor, material, taxes, subcontractors, etc. amounted to $7576.47, and that 10 per cent of that amount was $757.64, making a total amount due plaintiff on completion of the contract $8334.11. It was alleged that no part had been paid except $7700.00, and the balance of $634.11 with interest at the rate of six per cent per annum from 28 December 1954 was then due and owing. The execution and filing of the notice of lien on 25 February 1955, and service on defendants of notice and demand for payment, was then alleged. It was alleged that defendants continued to fail to pay any portion of the amount claimed by plaintiff under the lien and that the whole was then due and owing. Plaintiff alleged that he was required to incur an expense for attorneys' fees in preparing the lien notice in the sum of $25.00; $2.25 for recording the lien notice; and that $200.00 was a reasonable sum to be allowed him as attorneys' fees in the prosecution of this suit. The prayer was for judgment for $634.11 with interest thereon at six per cent from 28 December 1954; $27.25 expenses in preparing and recording the lien notice; and $200.00 attorneys' fees, and costs and disbursements. It was further prayed that the amount of the judgment be decreed a first, valid and existing lien on the home and real property referred to; that it be foreclosed, and the home and a sufficient amount of land for its convenient use and occupation be sold for the purpose of satisfying plaintiff's lien. The lien notice was attached to the complaint, and made a part thereof.

The answer admitted that defendants were the

owners of certain real property located in Manzanita, Oregon; that plaintiff performed certain remodeling work on the house owned by defendants, and that they had paid plaintiff $7700.00 for that work. It denied that any sum was owing from defendant to plaintiff for the remodeling work but alleged that defendants had over-paid plaintiff "by a considerable sum by reason of a mistake of fact and false and fraudulent representations made to defendants by plaintiff concerning the amount of work and materials used in the remodeling work." All other allegations of the complaint were denied. For the first separate answer and defense, it was alleged that on or about 22 September 1954 plaintiff agreed to perform for defendants a remodeling job on the house owned by them, for the sum of not to exceed $6500.00. It was alleged that "plaintiff performed, after a fashion, part of the work agreed upon." It was further alleged that prior to the undertaking of the work by plaintiff he prepared and submitted to defendants a memorandum which provided among other things that defendants were to pay for the work on a cost plus basis. It was alleged that on plaintiff's assurance and representations to defendant Marie Rendahl that the total cost of the work to be done would not exceed the sum of $6500.00, plaintiff fraudulently induced her to sign the memorandum. It was alleged that plaintiff was then estopped and barred from asserting any claim against defendants. The reply, filed 29 September 1955, admitted that defendants signed a memorandum providing that plaintiff was to remodel, alter and repair a house owned by defendants on a cost plus basis. All other allegations were denied.

For a second separate answer by way of counterclaim, the answer alleged that plaintiff undertook to

do certain remodeling work for defendants and agreed to do the work for a sum not to exceed $6500.00. It was alleged that upon false and fraudulent representations made to defendants by plaintiff, and under a mistake, defendants had paid to plaintiff $1200.00 in excess of the $6500.00 agreed upon and stipulated to by plaintiff; that said excess sum was paid by them to plaintiff under mistakes of fact and law. It was then alleged that plaintiff presently held $1200.00 to the use and benefit of defendants, and that sum was then owing by plaintiff to defendants. The reply denied each and every allegation therein contained, except as it conformed to the complaint. It was further alleged that the second separate answer failed to state facts sufficient to constitute a cause of suit or action and did not constitute a proper or sufficient counterclaim; that the court had no jurisdiction to award defendants any judgment on a counterclaim. The prayer of the answer was for dismissal of the complaint, and that defendants have judgment against plaintiff for $1200.00, together with their costs and disbursements. The prayer of the reply was for judgment and decree in accordance with the complaint.

The cause was tried on December 14, 15 and 21. On 20 March 1956 the court entered its decree, by which it denied plaintiff's lien claim and decreed that it be of no force or effect. There were no findings of fact. Plaintiff's brief calls our attention to an alleged opinion of the trial court, which is not before this court. However, since defendants admit to its existence, we may conclude that there is such an opinion. It is quoted in plaintiff's brief, as follows:

> "The court is of the opinion that the plaintiff did not perform in a workmanlike manner, and that defects are apparent, which would defeat enforcement of a lien.

"Dismissal of plaintiff's complaint for lien foreclosure shall be without prejudice to any rights plaintiff may have to enforce his claim as an action at law."

■ The quality of workmanship was the principal issue in the case and was the issue on which it was decided. Plaintiff contended that there was no issue of that nature involved. In fact there was no allegation of defective workmanship in the answer, and there was no claim pleaded by the defendants for offsets on account of defective workmanship. The issue, however, was raised by the plaintiff's allegation that he has "fully performed his part of said contract", and by the general denial of the defendants.

■ Before considering the main issue in the case we will take note of some preliminary matters. Inspection of the contract discloses that Mrs. Rendahl was the only defendant who signed the written contract. Nevertheless we hold that the contract bound both defendants. The contract reads that the contract is "between Mr. and Mrs. John Rendahl, owners" and the plaintiff. Defendants in their brief say that "Mr. Rendahl is 79 years of age and is extremely difficult to communicate with." He was present when his wife signed the contract. The defendants filed a joint answer admitting that they are the owners of the house on which the work was done, and that defendants have paid plaintiff $7700 for said work, and that plaintiff agreed to do certain remodeling work *"for defendants."* (Italics ours.)

The defendant husband was present during a large part of the work, and inspected much of it. The evidence convinces us that it was the intention of both defendants that both should be bound by the contract and by the signature of the wife. *Young v. Neill,* 190

Or 161, 220 P2d 89, 225 P2d 66; *Title & Trust Co. v. Nelson,* 157 Or 585, 592, 71 P2d 1081. The defendants earnestly contend that the plaintiff has failed to prove that he did the work in a good workman-like manner, but they rely upon the rule that even if the court erred in holding that the plaintiff failed to perform in a workman-like manner, the decree should be affirmed because the decision is correct for other reasons. *Walker v. Mackey,* 197 Or 197, 228, 251 P2d 118, 253 P2d 280; *Suetter v. Kern & Co.,* 146 Or 96, 29 P2d 534; *Hudson v. Goldberg,* 123 Or 339, 342, 262 P 223. We will now consider those other reasons.

■ The defendants' answer by way of counterclaim is clearly insufficient. The entire allegation on this issue reads as follows:

> "That plaintiff undertook and agreed to do certain remodeling work for defendants and agreed to do said work for a sum not to exceed $6500.00. Upon false and fraudulent representations made to defendants by plaintiff, and under a mistake, defendants have paid to plaintiff $1200.00 in excess of the $6500.00 agreed upon, and stipulated to by plaintiff; that said excess sum was paid by defendants to plaintiff under mistakes of fact and law."

We are not informed as to what representations were made or in what respect they were false, or were material, or what was the mistake of fact or law. Defendants prayed for judgment against the plaintiff for $1200. The court did not grant it and defendants did not appeal.

■ Defendants contend that the written contract on the basis of cost plus 10 per cent covered only a small part of the entire job and that the rest of the work, not being under the written contract, could not be included in the lien claim set forth in the complaint. They

base this contention on the fact that a considerable portion of the work to be done had not been agreed upon when the contract was signed. In their brief defendants claim that

> "It is quite clear that the only work to be performed by plaintiff under the express contract of September 22, 1954, for which he alleges he was to receive cost plus 10%, was just one bedroom, the porch, and the filling in on the outside. It would be for the work and materials furnished for these three items, and only these, that plaintiff could claim compensation on a cost plus basis (assuming arguendo that he is entitled to compensation on this basis)."

This contention is without merit. The evidence discloses that when they first discussed the project, plaintiff told the defendants that the only way he would do the job was on a cost plus basis.

■ Originally defendants wanted their house remodeled. They wanted to fill in the corner about 4 by 12 and put a porch on the front, add a room and make the old original bedroom into the living room. Plaintiff measured the house, drew a sketch of the proposed work, and made a written estimate of the cost, which is in evidence. The estimated cost was $4441.27, to which was added 10 per cent profit of $444.12, or a total of $4885.39. This estimate he showed to defendants. It is in evidence as Exhibit 1. The estimate was based on the adding of only one bedroom at the back of the house. Defendants said they wanted two bedrooms added, so plaintiff took the sketch back and added another bedroom, and again showed it to defendants. But no additional estimate of cost was made. The case is complicated by the fact that Mr. Rendahl burned up the floor plans prepared by the plaintiff. This he did at about the time the job was finished. He said,

"Well, I guess we don't need these any more", and threw them in the stove. These drawings included the extra bedroom. After the signing of the contract and when the work was in progress, it was agreed that plaintiff should remodel the kitchen and the utility room, and build a woodshed. No new agreement was written up.

The defendants contend that the cost plus provision applied only to the work which had been agreed upon before the contract was signed. They then argue that the work agreed upon and performed after 22 September (the date of the contract) was not covered by the express contract pleaded and that recovery could be had, if at all, only on the basis of an implied contract (quantum meruit). They conclude that since the complaint alleges an express contract, plaintiff's recovery in this case must be only for the work agreed upon before 22 September. This contention is without merit. The dealings were highly informal. Changes were made at will. We think that the contract provision that the building was "to be remodeled according to plans furnished by builder and approved by owners" was treated by the parties as being prospective. No other express agreement as to payment was signed, or we think made, even informally, and the terms of the writing governed the measure of compensation for all work done. We are unable also to accept the defendants' contention that plaintiff, contrary to the terms of the writing, agreed to do the work for "a sum not to exceed $6500.00." There may have been conversation at some stage of the work that the cost, plus 10 per cent, would probably not exceed that sum, but it is difficult to believe that there was any intention to modify the written contract to that extent in view of the informal way in which new projects were added from time to time.

Furthermore, the undisputed evidence is that defendants paid plaintiff $7700.00, the last payment being on 10 January 1955. This they would not have done if they believed that there was an express contract to do the work for $6500.00.

■ Defendants also argue that plaintiff should have been precluded from offering any evidence in support of his case "by reason of his failure to comply with defendants' demand for an itemization of the alleged account."

The record shows that on 18 April 1955 defendants filed a motion for an order

"Requiring plaintiff to make his complaint more definite and certain by setting forth specifically and with particularity each and every item of labor and materials alleged furnished to defendants, setting forth the unit cost, the amount, the date delivered, the quantity and quality,   *   *   *."

The motion was denied. Thereafter the defendants served upon plaintiff a demand that plaintiff within five days furnish defendants a verified statement of the account alleged in plaintiff's complaint. The demand reads in part, as follows:

"You are required to furnish to defendants an itemized account of each and every item of labor and materials allegedly furnished to defendants on said account, setting forth the unit cost, the amount of labor and materials, the dates delivered, the quantity and quality."

Defendants take the position that plaintiff should have been precluded upon trial from giving evidence of his alleged account by reason of his failure to comply with defendants' demand for an itemization of the account. They rely upon the statute which provides:

"A party may set forth in a pleading the items of an account therein alleged, or file a copy thereof,

with the pleading verified by himself, or his agent or attorney, if within the personal knowledge of such agent or attorney, to the effect that he believes it to be true. If he does neither, he shall deliver to the adverse party, within five days after a demand thereof in writing, a copy of the account, verified as in this section provided, or be precluded from giving evidence thereof. The court or judge thereof may order a further account when the one filed or delivered is defective." ORS 16.470.

In this case the lien notice is attached to and made a part of the complaint and is sworn to as correct. As a part of that notice there is an itemized statement, as follows:

"Jan 9—1955      FLOYD D. CULVER, BUILDER
                 Rt. 1 Box 168 NEHALEM, ORE.

TO  JOHN AND MARIE RENDAHL,
     MANZANITA, OREGON

BILLS PAID

1954

| | | | |
|---|---|---|---:|
| Oct. | 9 | Nehalem Lumber Co. .........................$ | 47.16 |
| Oct. | 29 | Montgomery Ward (Staples) ......... | 2.60 |
| Nov. | 5 | City of Manzanita (Bldg Permit) | 2.00 |
| Nov. | 9 | Lamb Schrader Co. (Concrete) .... | 79.05 |
| Nov. | 9 | Pacific Bldg Materials Co. (Wall Ties) ............................................. | 2.00 |
| Nov. | 9 | Mekkers & Redmer Plumbing ......... | 14.39 |
| Nov. | 9 | Nehalem Lumber Co. ......................... | 603.03 |
| Nov. | 20 | George Hayden (Fireplace) ........... | 450.00 |
| Dec. | 8 | Harry Kenny (Saw Filing) (cash) | 7.00 |
| Dec. | 10 | Tillamook Portland Auto Freight | 8.69 |
| Dec. | 10 | Hutton Electric Service ................. | 564.00 |
| Dec. | 10 | Nehalem Lumber Co. ....................... | 1044.75 |
| Dec. | 17 | Tillamook Portland Auto Freight | 1.80 |
| Dec. | 23 | Cash Telephone ................................. | .90 |
| Dec. | 23 | Cash White Gas ................................. | .90 |

Jan. 1955

Jan.  7 Cash Telephone Not Charged ......... 2.40
Jan. 10 E. D. Kingsley Lumber Yard ......... 19.05
Jan. 10 Barclay Sheet Metal Works ......... 63.15
Jan. 10 Sunset Floor Covering Co ............ 281.89
Jan. 10 Nehalem Lumber Co .......................... 389.02
Jan. 10 Hutton Electric Service ................. 343.35
Jan. 10 Saw Filing Cash Not charged ......... 3.50

$3924.73

| LABOR & TAX | | Tax | |
|---|---|---|---|
| Harry H. Kenny ......... | 1000.38 | 70.02 | 1070.40 |
| William H. Brunelle | 804.10 | 56.29 | 860.39 |
| William LeRoy Peeler | 487.60 | 34.13 | 521.73 |
| Fredrick H. Heinz Jr | 78.10 | 5.47 | 83.57 |
| Floyd D Culver | | | |
| (No-Tax) ............... | 1115.65 | | 1115.65 |

7576.47

Plus 10% ................. 757.64

8334.11

CASH ADVANCED

| Oct. 18 '54 By check | 1000.00 | |
|---|---|---|
| Nov. 9 '54 | 1500.00 | |
| Dec. 9 '54 | 2700.00 | |
| Jan. 10 '55 | 2500.00 | 7700.00 |

BAL DUE                        $ 634.11"

Plaintiff thereby substantially complied with the provisions of ORS 16.470 which authorize the inclusion of the items of an account in a pleading, or the filing of a copy thereof, with the pleading. It is only "if he does neither" that he is required to deliver a copy of the account within five days after demand or be barred from giving evidence thereof. If the account as pleaded

was insufficient in detail, the remedy was by motion to make more definite and certain. The plaintiff made such a motion, which was denied by the court. Furthermore, the defendants inform us that at a later time they took plaintiff's deposition, and his records were then before counsel for defendants. The deposition is not in the record. Under these circumstances we find that the court did not err in permitting the plaintiff to introduce evidence in support of his claim. Defendants were not prejudiced. See *Christman v. Salway,* 103 Or 666, 688, 205 P 541.

Defendants contend that the lien was not filed within the required 60 days from the completion of the work. The weight of the evidence is to the effect that the lien was timely filed.

We now approach the crucial question on which the case was decided. The question is whether the plaintiff fulfilled his agreement that all work was to be done in a good and workmanlike manner. The opinion of the trial court indicates a finding that the plaintiff did not comply with this provision sufficiently to permit the foreclosure of the lien, but also indicates that the decision on the lien claim should be without prejudice to the enforcement of any rights plaintiff may have to enforce his claim in a law action. That there were defects in workmanship is established by the evidence, but whether such defects were of such a substantial nature as to defeat the claim of lien is the question at issue.

In *Edmunds v. Welling,* 57 Or 103, 110 P 533, plaintiff brought suit to foreclose a mechanic's lien for work in painting, papering, etc. a building which was being constructed. The agreed compensation was $90 cash and clothing of the value of $85, or a total of $175 (the year being 1910). There were defects in workmanship

similar in nature to those in the pending case. The trial court entered a decree foreclosing the lien but allowed the defendant a deduction from the agreed price of $40, about 20 per cent of the agreed price. The Supreme Court said:

> "* * * The rule is that the work must be done substantially according to the contract to entitle the contractor to a lien. But if an effort in good faith has been made to comply with the contract, and [it] is substantially, though not fully complied with, the contractor is entitled to a lien for the contract price, less such deductions as should be made on account of the defects and omissions in doing the work. * * *"

The decree foreclosing the lien was affirmed.

In *Walsh v. Nelson,* 63 Or 84, 126 P 606, plaintiff brought suit to foreclose a mechanic's lien for labor performed in the construction of a building. The agreed price was $1680. The trial court foreclosed the lien after deducting damages in the sum of $25, and awarded plaintiff a net balance of $289.96, for which a decree of foreclosure was issued. On appeal this court made another small deduction and affirmed the decree of foreclosure, allowing to the defendant his costs in this court. This case also resembles the one at bar as indicated in the opinion. The court commented as follows:

> "We think that, on the whole, the contract has been substantially complied with to the practical completion of the work. No detailed specifications were prepared beyond those in the writing already quoted and the floor plans, which were used as the work progressed. These particulars seem to have been left to the will of the parties as they proceeded with the undertaking. The conclusion depends almost entirely upon questions of fact. * * *"

See also, *Zanello & Sons v. Portland Central Heating Co.*, 70 Or 69, 139 P 572.

In *Birkemeier v. Knobel*, 149 Or 292, 40 P2d 694, this court affirmed a decree foreclosing a mechanic's lien notwithstanding the fact of defective workmanship. Plaintiff alleged that the reasonable price for labor and material furnished was $5387.39, of which $4093 was due and unpaid. The trial court decreed the foreclosure for the lien in the amount demanded, less $273 for omitted and defective work. This court affirmed. We quoted with approval from *Pippy v. Winslow*, 62 Or 219, 125 P 298, the following definition of substantial performance:

" 'The substantial performance of a contract like the one in question permits only such omissions and deviations as are inadvertent and unintentional, are not due to bad faith, do not impair the structure as a whole, can be conveniently remedied, and may, without injustice, be paid for by deductions from the contract price. Where the contractor fails to perform a considerable part of the work required by the contract, his failure, irrespective of whether his intentions were good or bad, constitutes a bar to his enforcement of a lien for the work performed. If the defects show that the contractor performed the work in a slovenly and improper manner, not conforming substantially with the plans and specifications and thereby defeating the intentions of the parties to have the work done in a particular manner, the contractor, unless there has been a waiver, cannot enforce a lien. The willful omission, though in an unimportant respect, will preclude the assertion of a lien by him. The spirit of the contract should be faithfully observed, though the letter thereof fail.' " *Birkemeier v. Knobel*, 149 Or at 308.

See also, *Spokane County v. Pacific Bridge Co.*, 106

Or 550, 559, 213 P 151; 17 CJS 1089, Contracts, § 509; 17 CJS 1101-2, Contracts, § 514b.

■ We find that the plaintiff has sustained the burden of proof as to the amount of labor and materials which went into the building. The contractor who testified as an expert witness for the defendant estimated the approximate amount of labor and materials at considerably less than the amounts testified to by plaintiff and supported by checks and invoices. But he admitted that "it is unknown just how much labor was involved in tearing out walls, partitions, doors, windows, roof framing, etc. and just how much in tieing in again." The contractor was not present during the work, and based his estimates in part on guess work and information furnished by defendants. We reject his estimates as to the amount of labor and material. As to the workmanship, he stated in a written report, in part, as follows:

"* * * The general framing is excellent and most of the finishing is very good work. There are a few open joints and a few rough spots which the painter could have conditioned before finishing. One French door stile is split full length, this could have been repaired at nominal cost. * * * The electric cost seemed about right. $900. The fireplace is very good. The kitchen cabinets are not well built. A nice job was done on the outside as to concrete, shakes, trim, roof, etc. * * * The grade of the framing materials was good, # 2 or better. The grade of the finish was good except in a couple or three cases. The plywood was not the best. * * * The tapeing of the sheetrock was a very poor job. The front door is of second grade stock and don't fit too well. * * *"

This witness stated that "the original house had about 480 sq. ft. of floor space. The addition was approx. 260 sq. ft." But the defendants' son, a professional

painter, gave the inside measurement of the remodeled and enlarged house as 937 square feet inside measurement, or 1060 square feet outside measurement. According to this witness there was between 450 and 500 feet added to the floor space as against the 260 feet testified to by the contractor witness.

■ Defendants as witnesses proved a number of other minor defects, but taking the case as a whole, we think that defendants have exaggerated the defects and that the testimony of their expert witness fairly sets forth the extent of the defective workmanship though his post facto estimate or guess as to the amount of labor and materials that went into the rebuilding cannot be accepted as against the evidence presented by plaintiff. There is one claim which requires special mention: Defendants assert and plaintiff denies that the contract called for a glassed-in porch across the entire front of the building. The porch extends across only about two-thirds of the front but the defendants daily saw the work as it was being done and made no complaint. In fact there is undisputed evidence that at times they expressed satisfaction with the job. The evidence on the porch issue would not only support a waiver but it casts doubt on the defendants' contention as to that provision of the contract especially in view of the fact that they destroyed the drawings.

The lien states the amount of labor and materials at $7576.47 plus the agreed 10 per cent in the amount of $757.64, or a total of $8334.11. After the completion of the job and on 10 January 1955 defendants made their last payment of $2500, making a total amount paid on the contract $7700 and leaving only a claimed balance of $634.11. In the absence of any proper pleading or proof of fraud we think their claim that the total cost was to be only $6500 must fail. There is no

merit in their claim of overpayment in the sum of $1200.

We fear the defendants have been badly advised, though not by their attorneys. The testimony of Claude A. Larkin as to the bad reputation of plaintiff for truth and veracity was obviously biased. His testimony showed personal ill will toward the plaintiff as a result of business transactions between them, the merits of which were not and could not be litigated here. Numerous witnesses testified to the plaintiff's good reputation.

We have given careful study to the transcript of testimony containing 349 pages, on a case involving a claim for only $634.11. We will not encumber the reports with a detailed discussion of this evidence. Nor will we send the case back for further evidence as to the amount of money which should be deducted on account of defective workmanship. In the nature of the case the amount of such deduction would have to be based on estimate only. The expense of relitigating would result in loss to both parties. The case should be wound up here. The decree of the lower court is reversed.

We find that plaintiff substantially complied with the contract. He has, however, failed to prove full compliance with the agreement to do the work in a good workmanlike manner. Equity will be done if $250 be deducted from plaintiff's claim. The lien is valid to the extent of $384.11. The lien on the building and the lot on which it stands, which lot is 50x80 feet in dimension, will be foreclosed as provided by law. The plaintiff will have judgment and decree for $384.11 with interest thereon at 6 per cent per annum from December 28, 1954, and for the further sum of $200 attorneys' fees, neither party to recover costs.