Argued November 1, 1963, affirmed February 13, 1964

# MATHIS *v.* THUNDERBIRD VILLAGE, INC. ET AL
### 389 P. 2d 343

*William E. Duhaime,* Medford, argued the cause for appellants. On the briefs were Brophy, Wilson & Duhaime, Medford.

*E. R. Bashaw,* Medford, and *Edward M. Murphy,* Roseburg, argued the cause for respondent. On the brief were Jones, Reeder & Bashaw, Medford, and Yates & Murphy, Roseburg.

Before PERRY, Presiding Justice, and O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

DENECKE, J.

Plaintiff builder contracted to build a supermarket for the defendant Thunderbird Village, Inc., hereinafter called owner; the defendant life insurance company is the lender. The contract price was cost-plus 10 per cent. The owner paid the plaintiff $231,-000; the plaintiff claimed an additional $42,000, filed a claim of mechanics lien therefor, and brought this suit to foreclose his lien. The trial court awarded plaintiff $41,000 and foreclosed the lien.

Defendants assert that the complaint filed by the

plaintiff is fatally defective because it does not specifically allege a date of completion of the contract.

The Oregon Mechanics Lien statute, ORS 87.035, provides:

> "Every original contractor, within 60 days after the completion of his contract * * * shall file for recording * * * a claim containing a true statement of his demand * * *."

The plaintiff alleged in his complaint generally that he was a general contractor and that he entered into contracts with the defendant owner to construct a building and a parking lot. He further alleged:

"VI

> "Pursuant to said contracts and agreements the plaintiff did, between the 30th day of June, 1960 and March 2, 1961, perform labor upon and furnish material for use in, to be used in, and which was used, in the construction of said building and parking lot above described and did in a workman-like manner provide and perform all the labor and materials necessary for said construction and erection of said building in accordance with the drawings, specifications and plans provided therefore [sic], as corrected and changed from time to time, and that plaintiff performed all the terms and conditions of the contracts and agreements on his part to be performed, except as changed or modified by the owner during the progress of said work.
> "* * * * *

"VIII

> "That plaintiff, on the 13th day of April, 1961, and within 60 days after the completion of his contract, filed with the County Clerk of Jackson County, State of Oregon, a claim of lien * * *."

The defendants rely upon *Anderson v. Chambliss*, 199 Or 400, 262 P2d 298 (1953), in support of their

contention that the complaint does not state a cause of suit because it does not allege a date of completion of the contract. In that case the plaintiff alleged work was performed between September 7, 1949, and March 8, 1950, and that the lien was filed May 1, 1950. The court commented:

"* * * Nowhere in the complaint is it alleged affirmatively, either directly or indirectly, that the contract was completed, giving the date of such completion, nor is it alleged therein that the contract was not completed, and stating a valid reason for such failure to complete it.

"Under the provisions of § 67-105, OCLA [ORS 87.035], supra, in order to perfect a valid lien, it is mandatory that an original contractor file his claim within 60 days 'after the completion of his contract'. In a complaint to foreclose such a lien, it is necessary to charge that the contract was completed *and to give the date of such completion,* or if, for just cause, it was not completed, the reason therefor and the date on which the last labor or materials were furnished. In other words, it must affirmatively appear from the allegations contained in the complaint itself that the lien notice was filed within the 60-day period as required by the statute. A complaint that does not contain such essential allegation (or allegations equivalent thereto) fails to state a cause of suit and is fatally defective. * * *" (Emphasis added.) (199 Or at 406)

■ We hold that in order to state a cause of suit it is not necessary literally to state that the contract was completed on a certain date. We hold it is sufficient to state that the contract has been completed and the claim of lien has been filed on a certain date, naming it, and within 60 days after completion of the contract.

This is in accord with the decision of *Birkemeier v. Knobel,* 149 Or 292, 40 P2d 694 (1935). This court there stated:

"* * * Defendants argue that the complaint does not allege performance of the contract on the part of the plaintiff, and that if it does it fails to allege that the plaintiff filed the lien notice within 60 days of completion of performance. The amended complaint repeatedly uses the term 'the construction of said building', stating in one place that the house was constructed 'in accordance with plaintiff's contract with defendants, dated August 5, 1932, for the construction of said building'. This often employed term, in our opinion, denotes the complete erection of the dwelling house; in other words, it states, by inference at least, that the plaintiff completed performance of his contract. The complaint also alleges: 'Between August 1, 1932, and January 15, 1933, plaintiff herein, at the special instance and request of the defendants, furnished material and labor necessary to the construction of, and which was used in the construction of, said building.' It also alleges: 'Plaintiff herein, on March 1, 1933, and within 60 days from the completion of his furnishing material and labor in the construction of said building, filed' the lien notice. The lien notice attached to the complaint states: 'Said materials were furnished, and said labor was performed between the dates of August 1, 1932, and January 15, 1933.' These averments, in our opinion, state the facts which the defendants believe are missing. The language is ill adapted to the purpose, and certainly does not meet the standards of a skillful pleader; but the absence of fine technique alone is not fatal." (149 Or at 312-313)

∎ The defendants next assert that the suit should have been dismissed because the claim of lien was not timely filed. The plaintiff, being an "original"

contractor, had 60 days "after the completion of his contract" within which to file his claim of lien. His lien claim was filed April 13, 1961. The trial court's finding that the work was completed within 60 days preceding this date is affirmed.

■ Defendants admit some work was performed on February 16, a date within the 60-day period. Their contention is that such work was too trivial to be considered as extending the time of completion. They rely upon *Christenson v. Behrens,* 231 Or 458, 372 P2d 494 (1962), and cases cited therein. Applying the principles set forth in the *Christenson* case, the plaintiff's work, performed for him by a subcontractor, correctly can be considered completion of the contract. The work done by the subcontractor was a contract obligation of plaintiff; it was requested by the owner's representative after an inspection of the building; the labor and materials for the work, insulating ducts, cost $500; and it took two men several days to complete. In addition, as we pointed out in *Christenson v. Behrens,* supra (231 Or at 467), minor work is less likely to be considered work done in the completion of the contract, if the defendant is an innocent owner who has fully paid his general contractor and is now being sued by an unpaid subcontractor or materialman for work for which the owner has already paid once. Here, the defendant owner is contesting the amount owed under his prime contract; whatever the outcome, the owner will not be required to pay twice for any work.

Defendants contend that the lien contains a number of nonlienable items, some of which are unsegregated in the lien claim. They insist that one such item is that labeled in the claim of lien as "payroll taxes and insurance * * * consisting of Social

Security, Industrial Accident Insurance, Unemployment tax and contributions to Union Health and Welfare Fund pursuant to Union Agreement."

ORS 87.010 provides that a contractor shall have a lien for "labor." The question is whether the charges in this item are for "labor." In *Paget v. Peters,* 133 Or 608, 619, 286 P 983, 289 P 1119 (1930), we held that a premium for insurance, paid by the contractor, and covering the possible liability of the contractor and landowner to laborers on the job was a lienable item. *Willett v. Davis,* 30 Wash2d 622, 193 P2d 321 (1948), held social security, industrial accident, and unemployment compensation payments to be lienable as direct labor charges. In *United States v. Carter,* 353 US 210, 77 S Ct 793, 1 Led2d 776 (1957), it was held that payments due the Union Health and Welfare Fund were considered within the cost of "supplying labor" as that phrase is used in the Miller Act which provides for a surety bond "for the protection of all persons supplying labor" on construction work for the United States. 49 Stat 793, 794, 40 USC §§ 270(a), (b). Such a bond is a substitute for the right to a lien upon land and improvements.

■ Upon the basis of these decisions we affirm the trial court's ruling that payroll taxes and insurance are includable in the amount of the lien for "labor."

Defendants contend that the cost of erecting temporary sheds, and purchasing and renting small tools and equipment is a nonlienable cost. The trial court concluded that the costs of these items secured prior to December, 1960, had already been paid by the defendants and, therefore, were not a part of plaintiff's lien claim. Its decision in this regard is affirmed.

The contract contained a method of payment common to construction contracts. The contractor bills

the owner at the end of the month for all work done during the month. The owner is obligated to pay 90 per cent of this amount within 10 days. The remaining 10 per cent, which in this instance is in effect the contractor's fee, is payable within 30 days after final completion. All the costs about which defendants are complaining were included in the monthly billings made to the owner prior to December, 1960, and were paid by the owner. The amount expended after December 1, 1960, for these kinds of items totaled approximately $100. We consider this balance of the disputed cost de minimis.

■ Defendants also contend that most of the small tools and equipment purchases and all the equipment rentals, in addition to being nonlienable costs, were not proper costs under the contract. The trial court held that the only small tools and equipment included in plaintiff's claim were tools and equipment used up, consumed, in the construction,—such as saw blades. We also conclude that this is the fact, and the cost of such small tools and equipment is includable in fixing the cost of materials and labor in a "cost-plus" contract. See *Timber Structures v. C. W. S. G. Wks*, 191 Or 231, 251, 229 P2d 623, 25 ALR2d 1358 (1951), quoting from *Sampson Co. v. Commonwealth*, 202 Mass 326, 336, 88 NE 911 (1909).

■ The plaintiff contractor rented some equipment for short periods of time; for example, a ditch digger and space heaters. The rental was included by him in his costs and billed to the owner. Defendants assert that these are not includable in this "cost-plus" contract as a cost for labor and material. The contract provided that the sum to be paid the contractor "shall be the cost of all materials, labor, and subcontracts * * *, plus 10% * * *."

Other courts are in apparent disagreement on this question of whether equipment rentals are proper cost items in a "cost-plus" contract; however, the differences may be explained by the different contractual language. See *Pioneer Constructors v. Symes,* 77 Ariz 107, 267 P2d 740, 41 ALR2d 668 (1954) (not a proper cost); *Johnson v. Kusminsky,* 287 Pa 425, 135 A 220 (1926) (a proper cost).

We consider this contract ambiguous because it does not state what is to be included in the phrase "all materials, labor * * *" or what the "plus 10%" is to cover. (Both the contractor and owner participated in drafting the contract.) The trial court concluded that the owner, by its conduct, approved the inclusion of equipment rental as a cost to be paid by the owner. The evidence was that a representative of the owner went over the invoices substantiating the contractor's monthly billings. This was done before the monthly payment was made. The invoices clearly showed that certain charges were for rental of equipment. This was particularly true of the invoices which had the large letterhead, "WEST MAIN RENT-ALL." With this knowledge the owner's payment of the monthly billings, including these rental charges, evidences a belief that rental charges were a proper cost item under the contract. *Citizens State Bank of Long Beach v. Gentry,* 20 Cal App2d 415, 67 P2d 364, 367 (1937).

■ The lienability of the cost of the subsistence and travel paid the carpenter foreman is also in dispute. Only about $80 of this was incurred after November; so the earlier charges have already been paid. In the construction trades, as well as in other kinds of work, payment of subsistence and travel today is accepted as part of the cost of labor just as is the payment of

payroll taxes, insurance and contributions to Union Health and Welfare funds. *Barr v. World Keepfresh Co.,* 77 Or 95, 99, 150 P 747 (1915), followed in *Timber Structures v. C. W. S. G. Wks,* supra (191 Or at 251), held: " '*Board and expenses, when considered as used in the construction of a building, are non-lienable, but when they are a part of the reasonable compensation paid for the labor and materials, it is otherwise.*' " The last clause in the quotation is applicable to this case although the claim here is not for reasonable value, but for actual cost. The subsistence and travel costs are lienable.

Defendants assign as error the trial court's allowance, as a lienable claim, of the entire contract price paid to subcontractors. The owner's complaint is that, included in this price, are such costs as telephone and gasoline expenses and other expenses usually classed as overhead. These subcontracts between plaintiff and subcontractors were also on a "cost-plus" basis. We interpret *Timber Structures v. C. W. S. G. Wks,* supra, as holding contrary to defendants' contention. We held there that that portion of the overhead expense attributable to the job could be included in determining the reasonable value of the labor for the job. The issue here is not reasonable value, but contract price, computed upon a cost-plus basis, and we cannot observe any distinction when considering the question of lienability.

A major issue in this litigation is whether the contractor is entitled to a money decree for any sum in excess of the amount already paid by the owner. Below the signature lines at the end of the contract an additional paragraph appears stating in part: "It is further agreed that the total cost for building as stated above shall not exceed $173,000.00." The evi-

dence is conflicting whether this phrase was in the contract when plaintiff executed it. However, plaintiff, if not at the time of execution of the contract, then later, did agree to this provision, but on certain assumptions and under circumstances that are important.

Plaintiff was building a supermarket called Drive and Save in Roseburg, Oregon. Plaintiff told officers of the owner that he could build the supermarket they were planning in Medford for approximately $173,000. As he told them, this was on the basis of using the Roseburg market specifications with a few important savings to be accomplished by changes from those specifications. At the time plaintiff agreed to the $173,000 limit, no plans or specifications for the Medford market had even been commenced. Such plans were not completed by the engineer retained by the owner until three months after the construction contract had been entered into and when more than half of the time specified for completion had expired. The plans and specifications that were finally prepared for the Medford market were materially different in numerous respects from the plans for the Roseburg market. Some of the changes originally suggested by Mathis were used; some apparently were not. As the construction progressed, additional changes and additions were made to the plans and specifications for the Medford market. There is in evidence no accurate estimate of the cost of the changes from the Roseburg market plans or the subsequent changes in the Medford market plans.

At the same time plaintiff was constructing the market building, he was also constructing for the defendant Thunderbird Village a three-acre, 450-car

parking lot next to the building. This was being built pursuant to an oral cost-plus contract, separate and apart from the building contract containing the $173,000 limit. The parking lot contract had no limit. As originally contemplated, the parking lot's cost was estimated at $30,000. Some changes in plans for the parking lot were subsequently made. Estimates of its completed actual cost ranged from $30,000 to $60,000. Its actual cost is unknown because the monthly costs incurred by plaintiff in constructing the parking lot were lumped, unsegregated, with the monthly costs incurred in constructing the building; all were submitted as one monthly billing.

The monthly billings by plaintiff to the defendant owner for work done through November for building and parking lot, exclusive of the 10 per cent retainage, totaled $201,000. When the November billing was paid, which brought the total payments by owner to $201,000, the owner expressed concern over the total cost for the completed market and parking lot. The owner's representative's chief concern seemed to be that they only had a $200,000 commitment from the lender, and that was all used up. According to the owner's representative, he tried at that time to get plaintiff to give him an accurate figure of the balance of the construction cost, but he could not secure such a figure from plaintiff.

The billing for work done in December was $49,000, upon which the owner paid $15,000; the billing for work done in January was $8,000 and soon after such billing the owner paid another $15,000. The owner has paid $231,000 to the plaintiff for the work. Plaintiff claims the total cost is $273,000, leaving a balance of $42,000 claimed due and unpaid. There is no evidence that plaintiff did not incur the

costs he claims he incurred and there is no evidence that his costs were unreasonable. This $42,000 claimed consists of the unpaid balance on the December bill and the balance of the 10 per cent retainage. The trial court awarded $41,000.

 The trial court concluded that the parties had modified the $173,000 limitation provision of the contract. We also so conclude. "A subsequent departure from the terms of a written contract by the parties and mutually acquiesced in abrogates the original contract to that extent." *City Messenger Co. v. Postal Tel. Co.*, 74 Or 433, 441, 145 P 657 (1915). See *Kontz v. B. P. John Furniture Corp.*, 167 Or 187, 205, 115 P2d 319 (1941), and *Culver v. Rendahl*, 211 Or 682, 691, 318 P2d 275 (1957). Like other nonwritten contractual modifications, the evidence of the modification must be clear and convincing. Here, the changes from the Roseburg market plans, the changes in the original Medford plans, and the owner's payment of approximately $30,000 in excess of the $173,-000 limit plus the amount originally estimated for the parking lot, $30,000, convincingly lead to the conclusion that the $173,000 limit was deleted from the contract.

 Defendants moved to dismiss this suit upon the ground that the plaintiff had not substantially performed his contract. The trial court's denial of this motion is assigned as error. If work is not performed and completed substantially according to the contract, the contractor cannot recover the contract price. Substantial performance is accomplished although the contract is not completely performed if the omissions and deviations from the performance required by the contract are inadvertent and unintentional, do not impair the structure as a whole, can be easily remedied, and

may be paid for by deductions from the contract price. *Pippy v. Winslow,* 62 Or 219, 222-223, 125 P 298 (1912).

Defendants contend that plaintiff's most serious failure to perform substantially was plaintiff's constructing the building in the wrong location. This resulted in four and one-half feet of one side of the building being located on a strip of land supposedly subject to a right-of-way easement. Mathis admitted the sole responsibility for this error. Defendants contend, because of this error on plaintiff's part, that the encroaching portion of the building may have to be removed in the future.

The only parties, in addition to defendants, having any possible interest in such easement were the Schells, who own adjoining property, and Jackson County. The Schells claimed their vendor had represented that this strip was a dedicated public right of way. There is in evidence a conveyance from the Schells to Thunderbird Village, Inc., conveying any interest the Schells have in that portion of the strip occupied by the building. The deed is dated four days before the trial commenced, and the consideration was $400. Plaintiff secured the conveyance and paid the consideration. The defendant owner would not accept the deed from the plaintiff.

The possible interest of Jackson County arose because of the Schells' original claim. They claimed the strip was a public right of way dedicated by their vendor as part of a planned subdivision. The plans for the subdivision were disapproved by the Jackson County Court, and by such action the public refused to accept the 60-foot strip as a public way. A dedication is not binding on either party unless accepted, for property owners cannot be allowed to impose a

street upon a municipality against its will and thus compel it to make improvements. *Hendrickson v. City of Astoria,* 127 Or 1, 8, 270 P 924 (1928). So, under the provisions of ORS 92.016, 92.025, 92.040, 92.042, 92.044, 92.046 and 92.048, definite approval by the city or county was required before any public way could have been accepted. In view of the express disapproval of the whole subdivision by the authorities, the county had no interest in the land. Therefore, this particular piece of land had no encumbrances.

The trial court stated, with ample evidence in support thereof: "The Court cannot escape the conclusion that Thunderbird's position in relation to this so-called easement is somewhat cynical." Several aspects of the case point to this conclusion. First, Thunderbird readily decided, after discovering the mistake in the location of the building, to continue with construction and keep the mistake quiet. Second, Thunderbird ordered a light post to be moved from its location near the building into this 60-foot strip. Third, defendants paved or graveled a considerable portion of the strip for parking purposes. Fourth, the grading plan calls for parking stalls to be constructed in the 60-foot strip. This deviation from the contract became easily remedied, was paid for by the contractor, and did not impair the structure. It did not prevent the contract from being substantially performed.

The defendants also charged the plaintiff with failure to perform his contract in that he failed to build a cover over a compressor. The amount involved is $200 to $250. Defendant's contention in this regard is as follows: Plaintiff has alleged full performance of the contract; admittedly, he can recover if he proves substantial performance; however, his

failure to build the cover was not an unintentional omission; his omission was wilful and intentional; there is no substantial performance if the failure to completely perform is intentional. In *Pippy v. Winslow,* supra (62 Or at 223), this court said: "The willful omission, though in an unimportant respect, will preclude the assertion of a lien by him."

Corbin states that statements such as above quoted from *Pippy v. Winslow* are very common in the cases; however, Corbin comments:

> "In most cases making the statement, however, it is a mere dictum, the contractor being actually given a judgment for compensation, either on the basis of the contract price or for reasonable value of the part performance. In many cases in which the plaintiff's action is sustained on the ground that he has rendered substantial performance, nothing whatever is said on the question of wilfulness; it may well be, however, that we are meant to presume that the evil quality was absent. In other cases denying a recovery to the plaintiff on the ground that his breach was wilful, it is probable that his breach was actually such as to prevent his performance from being 'substantial.' \* \* \*" 3A Corbin, Contracts, 328-329, § 707 (1960).

In *Camp & DuPuy v. Lauterman,* 78 Or 134, 152 P 288 (1915), the breach was wilful. The contract required the contractor to furnish receipted vouchers to the owner for all labor and materials. The contractor refused to do so claiming it was inconvenient and tendered canceled checks as a substitute. However, the court did not comment on the contractor's wilfulness but denied recovery on the ground that the omission was not trivial.

We hold that a contractor failing to perform a

minor portion of his contract because the owner has breached the contract by failing to pay the contractor has not been guilty of a wilful omission or deviation and such an omission or deviation will not prevent reaching the conclusion that such contractor has substantially performed his contract. We have held substantial performance has been rendered although the work in minor detail is defective because the contractor did not do his work properly. *Culver v. Rendahl*, supra (211 Or 682, 695). A fortiori, a failure to complete a minor part of the work because the owner has failed to perform his obligation should not prevent the application of the doctrine of substantial performance.

On this same issue defendant contends that plaintiff cannot rely upon the theory that he was excused from building the cover because of defendant's failure to pay the balance of the contract price upon the ground that the plaintiff did not allege he was excused from performance. The accepted rule that if performance is pleaded, recovery cannot be based upon proof that performance was excused, waived, or prevented is not applicable if the doctrine of substantial performance is applicable. The basis for the procedural rule defendant is relying upon is that the party has failed to prove his complaint, i.e., plaintiff has alleged full performance and has proved only part performance. *DeVol v. Citizens' Bank,* 113 Or 595, 602, 233 P 1008 (1925). When the doctrine of substantial performance is applicable, as we hold it is here, the plaintiff can recover by pleading complete performance and proving substantial performance. *Culver v. Rendahl,* supra (211 Or 682); *Turner v. Jackson,* 139 Or 539, 548, 4 P2d 925, 11 P2d 1048 (1932). There is no question of failure of proof; it

is immaterial whether the failure of complete performance is defective workmanship in minor respects or the failure to complete a minor detail.

The decree is affirmed.