# LICHTY, *Appellant,*
### *v.*
# MERZENICH et ux, *Respondents.*
## (TC 90606, SC 24496)
### 563 P2d 690

Lawrence N. Brown, of Brown, Burt and Swanson, P.C., Salem, argued the cause and filed briefs for appellant.

Thomas B. Brand, of Brand, Lee, Ferris & Embick, Salem, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Bryson, Linde, and Davis, Justices.

LINDE, J.

## LINDE, J.

The dispute between the parties is whether a contract under which plaintiff would be paid an hourly rate for his services in constructing a residence for defendants was later renegotiated into an agreement to finish the remaining construction at a fixed price. Plaintiff sued to foreclose a lien for labor and materials under the original contract, and defendants counterclaimed for sums paid or to be paid by them beyond an allegedly renegotiated contract price. The trial court found for defendants and awarded them $3,300 on their counterclaim plus costs.

Dr. Merzenich hired Mr. Lichty in September, 1973, to take responsibility for building a residence. Under the original agreement, Lichty was paid by the hour for his services, plus $.25 for each hour of additional labor employed on the job. There is no dispute concerning payment under this agreement until September 12, 1974. By that time, the project had proved slower and costlier than expected. Defendant, Dr. Merzenich, prepared a list of items that he considered essential for plaintiff to get done and asked what it would cost to complete them. Plaintiff's version is that defendant asked for an estimate, defendant's is that he asked for a bid.

A few days later the two met at the site and discussed these items. According to Merzenich, when he asked Lichty at what cost he would complete the listed work, Lichty suggested that each of them write a figure on a piece of paper and turn the papers over simultaneously. Merzenich's figure proved to be $5,000, Lichty's $6,500. Merzenich's testimony continued:

> * * * I said okay. Then, I guess, we have got to come to an agreement between these figures. And he said yes, I just don't see how it could be, you know, much less than that 6500. So at that time, we agreed that he would do it. He agreed to do it for 6500 with a provision that we allow plus or minus 10%, not to exceed $6800 total.

[ 211 ]

> In other words, if it came in under 6200, I was to receive the benefit of the doubt on the 10%. If it came in over, I would pay him over.

Merzenich further testified that Lichty would not sign the slip because he did not have a contractor's license, but that he gave his word and they shook hands on it. Lichty's testimony was that the figures were estimates, that he made it clear he could not legally act as a contractor at a firm price, and that there was no handshake, but he did not deny the parties' use of the slips with their proposed cost figures. There was other testimony by men who worked on the job tending to show that after this meeting plaintiff took over more of the responsibilities of a contractor, which plaintiff contradicted or sought to explain in his testimony.

1. On this appeal from the adverse judgment of the trial court, plaintiff first raises an issue about the degree of proof needed to support the oral change in the contract asserted by defendants. The trial court found that the preponderance of the evidence established a contract for a specific sum. Plaintiff contends that an oral change in a prior agreement requires a higher standard of proof, which was originally stated as "clear and satisfactory evidence," *Boyes v. Ramsden,* 34 Or 253, 55 P 538 (1899), citing *Watson v. Janion,* 6 Or 137 (1876), but which should now be equated to "clear and convincing evidence" because "satisfactory" has been thought to approximate the standard of proof in criminal cases, *Cook v. Michael,* 214 Or 513, 330 P2d 1026 (1958). *Cf.* ORS 41.110. But the standard of "clear and convincing" evidence invoked by plaintiff refers to oral modifications of a *written* contract, as this court made clear in *Mathis v. Thunderbird Village, Inc.,* 236 Or 425, 438, 389 P2d 343 (1964). If the rule has a reason, it is not some intrinsic implausibility that an agreement once made may later be changed but rather the relative probative force of a document as against controverted testimony of an alleged oral replacement. The present case does not involve an oral change of a written agreement.

■■ Resolution of this dispute depends primarily on assessing the parties' opposing versions of their meeting in September, 1974. This court gives substantial weight to the trial court's appraisal of conflicting testimony even on review *de novo* in equity cases, ORS 19.125(3). *See, e.g., Wilkinson v. Carpenter,* 276 Or 311, 314, 554 P2d 512 (1976); *Adamson v. Adamson,* 273 Or 382, 389, 541 P2d 460 (1975). Apart from any question of credibility, the manner of arriving at the remaining costs by turning over slips on which each party had proposed a sum would seem an odd way for a builder and a dentist to arrive at an estimate of labor and materials; it appears more consistent with an attempt to negotiate an agreed price. We agree with the trial court's assessment of the evidence.

■ Plaintiff also contends that the terms of the parties' discussion of the work to be completed, while adequate as an estimate, were too indefinite to form the essential elements of a contract, citing *Klimek v. Perisich,* 231 Or 71, 371 P2d 956 (1962). In that case a widow who wished to remodel an old dwelling into a rooming house claimed that she had a contract with defendant, a builder, to carry out the project at a fixed estimate. The court found that the remodeling to be accomplished was never specified sufficiently to make out a contract between the parties. The decision illustrates the relevant principles but also the limited usefulness of matching facts among individually unique, nonformalized personal transactions. It would not be fruitful to recite points of similarity or difference between the present case and others in which the parties were found to have, or not to have, reached a mutual understanding adequate for judicial enforcement. Dr. Merzenich's list of work to be completed, which in another setting might have left a contractor's commitment too undefined, here drew meaning from the parties' collaboration on the project for a full year. Nor does the provision for ten per cent leeway in the price, depending on costs incurred, vitiate an agreement. We

conclude that the trial court's judgment on this issue, too, was correct.

Affirmed.